[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
March 13, 2008
THOMAS K. KAHN
CLERK

No. 07-13015
Non-Argument Calendar

_____

Agency Nos. A95-896-009
A95-896-010

ANTONIO CARLOS DE PAULA,
JAQUELINE APARECIDA DA COSTA,

Petitioners,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

**(March 13, 2008)**

Before MARCUS, WILSON and KRAVITCH, Circuit Judges.

PER CURIAM:

Antonio Carlos De Paula ("De Paula"), the lead petitioner, and his wife

Jacqueline Aparecida Da Costa ("Da Costa") seek review of the Board of

Immigration Appeals' ("BIA") decision affirming the Immigration Judge's ("IJ")

dismissal of their applications for asylum, withholding of removal, and relief under

the United Nations Convention Against Torture ("CAT"). For the reasons stated

below, we dismiss the petition in part and deny in part.

## I. Background

De Paula and Da Costa are both natives and citizens of Brazil. They were

admitted to the United States on March 11, 2001 as non-immigrants with

authorization to remain in the country until September 10, 2001.

On July 25, 2002, De Paula and Da Costa filed applications for asylum and

withholding of removal.[1] According to De Paula's application, he owned and

managed a general store in Petropolis, Brazil, a slum outside of Rio de Janeiro. He

and Da Costa lived behind the store.

De Paula claimed that a street gang forced local businesses to pay a weekly

"tax" or those businesses would be robbed and the proprietors would face potential

physical consequences. De Paula asserted that he refused to pay the gang out of

---

[1] According to the BIA, Da Costa proceeded as a derivative beneficiary. As such, she has no withholding of removal claim. See Delgado v. U.S. Att'y Gen., 487 F.3d 855, 862 (11th Cir. 2007).

fear that the gang would, over time, gradually increase the rates, making it impossible to earn a living.

The gang would allegedly rob the stores at night. De Paula alleged that the gang would turn off the electricity for the entire city block before robbing the stores so that the proprietors would not see who was robbing them. The block would then be without electricity for days before electricity would be restored. Because these robberies happened frequently, De Paula purchased a generator so that he could have his store back up and running shortly after the gang would visit.

De Paula alleged that one night the generator was functioning and the gang entered his store. The light allowed De Paula to identify one of the gang members—a well-known gang leader named Tiaozinho. After being robbed and physically attacked that night, De Paula went to the police and identified Tiaozinho as one of the attackers. The police then arrested Tiaozinho and he was in prison for four days. It is not clear how Tiaozinho was released, but De Paula asserted to the IJ that Tiaozinho bribed his way out of prison.

De Paula also asserted that in the weeks that followed Tiaozinho's release, De Paula was the victim of multiple threats of violence and two beatings. He claimed that the gang shot at his store, that it made numerous phone calls to him threatening to kill him and rape his wife, and that the gang wrote in blood on the store window that it would kill De Paula. On two occasions, De Paula was hurt

3

severely; once the gang beat him so seriously that he lost several teeth, and another time he permanently lost vision in one eye.

De Paula speculated that a police officer tipped off Tiaozinho that De Paula had turned Tiaozinho into the police. Both De Paula and Da Costa left their home and moved to Rio de Janeiro for two weeks before coming to the United States.

The IJ dismissed the applications for asylum, withholding of removal, and relief under the CAT, and the BIA affirmed. This appeal follows.

## II. Standard of Review

We review its subject-matter jurisdiction de novo. Brooks v. Ashcroft, 283 F.3d 1268, 1272 (11th Cir. 2002). We also review the BIA's legal determinations de novo. D-Muhumed v. U.S. Att'y Gen., 388 F.3d 814, 817 (11th Cir. 2004). The BIA's factual determinations are reviewed under the substantial evidence test, and this court "must affirm the BIA's decision if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole." Sanchez Jimenez v. U.S. Att'y Gen., 492 F.3d 1223, 1230 (11th Cir. 2007). The substantial evidence test is "highly deferential" and does not allow "re-weigh[ing] the evidence from scratch." Silva v. U.S. Att'y Gen., 448 F.3d 1229, 1236 (11th Cir. 2006). "To reverse the [BIA's] fact findings, [this court] must find that the record not only supports reversal, but compels it." Mendoza v. U.S. Att'y Gen., 327 F.3d 1283, 1287 (11th Cir. 2003). When reviewing a CAT claim, we have concluded

4

that whether a particular fact pattern constitutes "torture" is a mixed question of law and fact. Jean-Pierre v. U.S. Att'y. Gen., 500 F.3d 1315, 1322 (11th Cir. 2007).

### III. Discussion

*A. Timeliness of Asylum Application*

An alien can apply for asylum if he "demonstrates by clear and convincing evidence that the application has been filed within [one] year after the date of the alien's arrival in the United States." 8 U.S.C. § 1158(a)(2)(B). However, "[a]n application for asylum of an alien may be considered . . . if the alien demonstrates to the satisfaction of the Attorney General either the existence of changed circumstances which materially affect the applicant's eligibility for asylum or extraordinary circumstances relating to the delay in filing an application within the period specified . . ." 8 U.S.C. § 1158(a)(2)(D).

In order to file his asylum application within one-year of arrival, De Paula would have had to have filed his application by March 11, 2002. Instead, he filed it on July 25, 2002. Although he filed the application late, De Paula posits that it was filed within a reasonable period of the expiration of his lawful status in September 2001. He also states that his tardiness should be forgiven since exceptional circumstances exist; he cannot speak English and he did not know of the one-year requirement.

5

The government contends that this court lacks jurisdiction to review whether De Paula filed his application for asylum in a timely manner.

We have already concluded that section 1158(a)(3) divests our court of jurisdiction to review a decision regarding whether an alien complied with the one-year time limit or established extraordinary circumstances that would excuse his untimely filing. See Chacon-Botero v. U.S. Att'y Gen., 427 F.3d 954, 957 (11th Cir. 2005). Thus, we have no jurisdiction over the asylum claim, and we dismiss the petition in part.

*B. Withholding of Removal*

In a withholding of removal claim, an alien may not be removed to a country if his life or freedom would be threatened on account of race, religion, nationality, membership in a particular social group, or political opinion. 8 U.S.C. § 1231(b)(3)(A). The alien must show that it is "more likely than not that [he] will be persecuted or tortured upon being returned to [his] country." Sepulveda v. U.S. Att'y Gen., 401 F.3d 1226, 1232 (11th Cir. 2005). The applicant must show that his fear of persecution is subjectively genuine and objectively reasonable. Id. at 1231.

One way an applicant can meet this burden is to show that he suffered "past persecution on a protected ground." Mendoza v. U.S. Att'y Gen., 327 F.3d 1283, 1287 (11th Cir. 2003). De Paula bases his withholding of removal contention on

the argument that he faced past persecution. He argues (1) that his refusal to pay the gang was political expression, and (2) that as a Brazilian business owner, he is a member of a particular social group. The BIA dismissed these contentions.

We conclude that the BIA did not err. De Paula was the victim of severe threats and violence, but he was not threatened and attacked because of his political beliefs; the facts establish that he was a victim of an organized crime scheme. The facts indicate that he would have been a victim regardless of his political beliefs. His refusal to pay a "tax" to local thugs does not constitute a "political belief" for withholding of removal purposes.

Also, De Paula's occupation as a business owner does not qualify him as a member of a "social group" for withholding of removal purposes. Congress and this court have not defined "particular social group." Castillo-Arias v. U.S. Att'y Gen., 446 F.3d 1190, 1196 (11th Cir. 2006), cert. denied, 127 S.Ct. 977 (2007). This court has concluded, however, that the members of a "particular social group" must share a "common, immutable characteristic" such as "sex, color, or kinship ties, or in some circumstances . . . a shared past experience such as former military leadership or land ownership." Id. at 1193 (quoting Matter of Acosta, 19 I. & N. Dec. 211, 233 (BIA 1985)). The characteristic "must be one that members of the group either cannot change or should not be required to change because it is fundamental to their individual identities or consciences." Id. An occupation is

7

not an "immutable characteristic." Therefore, owning a business in Brazil does not alone constitute a "particular social group."

*C. CAT Relief*

To be entitled to relief under the CAT, an applicant must establish that it is "more likely than not that he or she would be tortured if removed to the proposed country of removal." 8 C.F.R. § 208.16(c)(2). "Torture" is defined as

> any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person for such purposes as obtaining from him or her or a third person information or a confession, punishing him or her for an act he or she or a third person has committed or is suspected or having committed, or intimidating or coercing him or her or a third person, or for any reason based on discrimination of any kind, when such pain or suffering is inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity.

8 C.F.R. § 208.18(a)(1). To acquiesce, the government must be aware of misconduct that it has a duty to prevent, and it must fail to intervene. 8 C.F.R. § 208.18(a)(7).

De Paula speculates that the police were somehow involved in his suffering; he bases this assertion on the facts that Tiaozinho was released after only serving four days in jail and that Tiaozinho "knew" that De Paula had spoken with the police. But a review of the record reveals that De Paula failed to meet his burden because he offered no evidence to support a link between the gang and the

police—he only speculated that such a link existed. One could just as easily speculate that Tiaozinho was released on bail and that Tiaozinho "knew" De Paula had contacted the police because De Paula's lights were on the last time the gang robbed De Paula. Moreover, the evidence shows that the police arrested Tiaozinho and that De Paula failed to report the subsequent beatings. Thus, after reviewing the record, we cannot say that it compels reversal.

### III. Conclusion

For the reasons stated above, we **DISMISS IN PART AND DENY IN PART**.