[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 08-11306
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
November 20, 2008
THOMAS K. KAHN
CLERK

Agency No. A98-677-534

LUIS GUILLERMO ARBELAEZ BONILLA,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(November 20, 2008)

Before CARNES, WILSON and KRAVITCH, Circuit Judges.

PER CURIAM:

Luis Guillermo Arbelaez Bonilla, on his own behalf and on behalf of his

wife and two daughters as derivative applicants, petitions for review of the Board

of Immigration Appeal's ("BIA") order adopting and affirming the immigration

judge's ("IJ") decision ordering his removal and denying his application for

asylum under 8 U.S.C. § 1158 and withholding of removal under 8 U.S.C.

§ 1231(b)(3). For the reasons discussed below, we deny his petition.

## I. BACKGROUND

Bonilla and his family, natives and citizens of Colombia, entered the United

States on August 2, 2004 as visitors for pleasure with visas authorizing them to

stay in the United States until January 29, 2005. In October of 2004, Bonilla filed

an affirmative application for asylum and withholding of removal on account of

his political opinion because of his support for the Colombian Liberal Party.[1]

Bonilla has supported the Colombian Liberal Party since the 1970s. In

1999, FARC, a guerilla organization in Colombia, began targeting him because of

that political support starting.[2] In December of that year, Bonilla asserts that

FARC attempted to kidnap him. Bonilla visited a farm owned by his family to

---

[1] In his application, Bonilla also requested relief under the Convention Against Torture. Bonilla, however, makes no arguments in his brief to this court regarding the Convention Against Torture. By failing to present arguments on this claim, Bonilla has abandoned it. See Mendoza v. U.S. Att'y Gen., 327 F.3d 1283, 1286 n.3 (11th Cir. 2003).

[2] These facts are taken from Bonilla's statement attached to his application and his testimony at his asylum hearing.

2

deal with farm administration following his mother's death.  After he departed, armed members of FARC came to the farmhouse, asked about Bonilla's whereabouts, asked when he would return, and stated that they "needed" him. Bonilla believed they were interested in kidnaping him because years earlier a list had been found at the time a neighbor of the farm was kidnaped by FARC.  That list had included his mother's name as a possible kidnaping target, and Bonilla believed that following her death, FARC would be interested in kidnaping him because he took over administration of the farm.[3]  After that day, Bonilla never returned to the farm.

Sometime in 2000, Bonilla traveled to the United States, but returned shortly thereafter to Colombia.

In 2001, the administrator of another of Bonilla's farms was murdered and Bonilla believed that FARC was responsible.  Bonilla testified that FARC "let [his family] know through neighbors that if [they] were to go back, [they] would probably suffer the same fate."

Bonilla's next contact with FARC occurred in November 2002, when an unidentified caller phoned his office, asking for Bonilla.  After this call, Bonilla contacted a police officer who said that he was unable to provide much assistance,

---

[3] It is unclear why FARC would target the administrator of this farm.

but advised Bonilla to take personal safety precautions. Bonilla moved his family to a new apartment building with better security. In December 2002, Bonilla traveled to the United States to attend a wedding, but again returned to Colombia.

In 2003, Bonilla received a letter, on FARC letterhead, identifying him as a friend of the politicians and an enemy of FARC. In response, Bonilla sent his wife and daughters to the United States in July of that year, but they returned in December. In 2004, Bonilla received more phone calls that he believed came from FARC at his office and home.

In April 2004, Bonilla was stopped by two men on motorcycles while driving in his company's car. These men stopped the car, identified themselves as members of FARC, and told Bonilla that he had thirty days to leave the City of Cartegena. Bonilla then quit his job and moved his family to Bogota, to live with his wife's parents. Bonilla felt that he was being followed in Bogota, and in August 2004, Bonilla and his family came to the United States. They have not returned to Colombia since that time.

The IJ denied Bonilla's application for asylum and withholding of removal, and ordered his removal to Colombia. In her oral decision, the IJ held that Bonilla was credible, but found that the facts did not support his claim that he had experienced past persecution. First, the IJ stated that the attempted kidnaping was

4

really just an inquiry by unknown persons. Second, despite receiving threats over the phone, Bonilla never suffered any harm. Third, "nothing happened" after Bonilla received the letter identifying him as an enemy. Fourth, after traveling twice to the United States, Bonilla returned to Colombia both times.[4] Fifth, after the April 2004 incident, Bonilla stayed in Colombia until August 2004. Although the IJ acknowledged that not all asylum cases require that action be taken against the applicant, she noted that no one appeared to be pursuing Bonilla. The IJ also found that Bonilla did not establish a well-founded fear of future persecution, because he visited the United States and returned to Colombia on two occasions despite the ongoing threats, and also remained in Colombia safely for several months after receiving the April 2004 threat. The IJ also concluded that Bonilla did not meet the heightened standard for withholding of removal, as he failed to demonstrate that he had ever been harmed in Colombia and only once tried to get assistance from police. The BIA affirmed the IJ's decision without opinion.

## II. STANDARD OF REVIEW

Where, as here, the BIA adopted the IJ's decision as its own, this court reviews the IJ's decision. Al Najjar v. Ashcroft, 257 F.3d 1262, 1284 (11th Cir.

---

[4] The IJ erroneously stated that these trips took place in 2002 and 2003; as stated above, they actually occurred in 2001 and 2002.

5

2001).  We review <u>de novo</u> the IJ's legal determinations.  <u>D-Muhumed v. U.S.</u>

<u>Att'y Gen.</u>, 388 F.3d 814, 817 (11th Cir. 2004).   Factual determinations are

reviewed under the substantial evidence test, and this court must affirm these

decisions if they are "supported by reasonable, substantial, and probative evidence

on the record considered as a whole."  <u>Al Najjar</u>, 257 F.3d at 1283-84.  A finding

of fact will be reversed "only when the record compels reversal; the mere fact that

the record may support a contrary conclusion is not enough to justify a reversal."

<u>Adefemi v. Ashcroft</u>, 386 F.3d 1022, 1027 (11th Cir. 2004) (<u>en banc</u>); <u>see also</u> 8

U.S.C. § 1252(b)(4)(B).

### III. DISCUSSION

The Attorney General and the Secretary of Homeland Security have

discretion to grant asylum if the alien meets the statutory definition of a "refugee."

<u>See</u> 8 U.S.C. § 1158(b)(1).  A "refugee" is:

> any person who is outside any country of such person's nationality or,
> in the case of a person having no nationality, is outside any country in
> which such person last habitually resided, and who is unable or
> unwilling to avail himself or herself of the protection of, that country
> because of persecution or a well-founded fear of persecution on
> account of race, religion, nationality, membership in a particular
> social group, or political opinion . . . .

8 U.S.C. § 1101(a)(42)(A).  The asylum applicant carries the burden of proving

statutory "refugee" status.  <u>See</u> <u>Al Najjar</u>, 257 F.3d at 1284.

To establish asylum eligibility, the applicant must, with specific and credible evidence, demonstrate (1) past persecution on account of a statutorily listed factor, or (2) a "well-founded fear" that the statutorily listed factor will cause future persecution. 8 C.F.R. § 208.13(a), (b); Al Najjar, 257 F.3d at 1287. If he cannot show past persecution, then the petitioner must demonstrate a well-founded fear of future persecution that is both subjectively genuine and objectively reasonable. See Al Najjar, 257 F.3d at 1289. The subjective component can be proved "by the applicant's credible testimony that he or she genuinely fears persecution," and the objective component "can be fulfilled either by establishing past persecution or that he or she has a good reason to fear future persecution." Id. (quotation omitted). We consider the "cumulative effects" of the alleged incidents of persecution when considering claims of past persecution. Delgado v. U.S. Att'y Gen., 487 F.3d 855, 861-62 (11th Cir. 2007).

We have described persecution as an "extreme concept, requiring more than a few isolated incidents of verbal harassment or intimidation." Sepulveda v. U.S. Att'y Gen., 401 F.3d 1226, 1231 (11th Cir. 2005) (internal quotation omitted). Consequently, menacing telephone calls and verbal threats, without more, do not amount to persecution. Id. Major physical harm, on the other hand, is not required. See De Santamaria v. U.S. Att'y Gen., 525 F.3d 999, 1009 (11th Cir.

2008) (finding past persecution where the applicant suffered "repeated death threats, two physical attacks [which resulted in minor physical injuries], the murder of a family friend, and a kidnapping cut short only by a harrowing escape"); Mejia v. U.S. Att'y Gen., 498 F.3d 1253, 1257 (11th Cir. 2007) (finding evidence of past persecution where the applicant experienced "threats and attempted attacks over an eighteen-month period, which culminated when he [was] stopped on a roadway by three armed members of the FARC, who threatened [him] at gunpoint, threw him to the ground, and smashed him in the face with the butt of a rifle, breaking his nose"). Although an applicant need not suffer severe physical injury to establish past persecution, these cases demonstrate that he must have been subjected to more than verbal harassment or intimidation.

Here, substantial evidence supports the IJ's conclusion that Bonilla did not suffer past persecution. When the FARC members visited his family's farm, they did not explain why they needed him nor threaten him. Some of the phone calls that he received were no more than unidentified callers asking for Bonilla. The more serious acts that comprised actual threats were not followed by any further mistreatment nor even an attempted physical attack. Furthermore, long periods of time passed between each event wherein Bonilla lived safely in Colombia. These events experienced by Bonilla do not rise to the level of past persecution; they

were no more than "a few isolated incidents of verbal harassment or intimidation."

The record also does not compel a finding that Bonilla had a well-founded fear of future persecution. His testimony was found credible, and Bonilla thus satisfied the subjective prong of the test. The objective reasonableness of his fear, however, was undermined greatly by the facts of this case. As discussed above, many of the incidents experienced by Bonilla amounted to no more than inquiries as to his whereabouts. Even the more serious threats were never followed by physical attacks or attempted physical attacks against him. Additionally, following the last and most menacing encounter with FARC, Bonilla was able to remain in Colombia for four to five months without having another run-in with FARC, much less coming to physical harm during that time. An objective person would not fear future persecution based on these circumstances. Thus, substantial evidence supports the IJ's finding that Bonilla was not eligible for asylum.

Bonilla has also failed to establish that he qualifies for withholding of removal. To qualify for withholding of removal, the applicant must show that it is more likely than not that if returned to his country, his life or freedom would be threatened on account of his race, religion, nationality, membership in a particular social group, or political opinion. Mendoza v. U.S. Att'y Gen., 327 F.3d 1283, 1287 (11th Cir. 2003). "Where 'an applicant is unable to meet the 'well-founded

9

fear' standard for asylum, he is generally precluded from qualifying for either asylum or withholding of deportation.'" Al Najjar, 257 F.3d at 1292-93 (quoting Nkacoang v. INS, 83 F.3d 353, 355 (11th Cir.1996)).  Because Bonilla failed to demonstrate a "well-founded fear of persecution" sufficient to support his claim for asylum, we hold that the IJ properly determined that Bonilla was unable to satisfy the greater burden of qualifying for withholding of removal.

## IV.  CONCLUSION

Because substantial evidence supports the IJ's decision, Bonilla petition is **DENIED**.