[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
NOV 20, 2008
THOMAS K. KAHN
CLERK

_____

No. 08-12059
Non-Argument Calendar

_____

Agency Nos. A95-896-042
A95-896-043

HONGLUN LEI,
SHINTA SUSILO PUTRI,

Petitioners,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

**(November 20, 2008)**

Before BIRCH, HULL and PRYOR, Circuit Judges.

PER CURIAM:

Honglun Lei, a native and citizen of China, and his wife, Shinta Susilo Putri,

a native and citizen of Indonesia, petition this Court for review of the decision of the Board of Immigration Appeals that denied their applications for asylum and withholding of removal under the Immigration and Nationality Act and the United Nations Convention Against Torture and Other Cruel, Inhuman and Degrading Treatment or Punishment. INA § 241(b)(3), 8 U.S.C. § 1231(b)(3); 8 C.F.R. § 208.16(c). The Board found that the application for asylum was untimely and that Lei had failed to establish either a probability of future persecution or a likelihood of torture if he returns to China. We deny the petition in part and dismiss the petition in part.

## I. BACKGROUND

Lei was admitted to the United States in March 1996 as the spouse of a student, Zhilin Liu. Lei's status later changed to the spouse of a specialty occupation professional, and he was authorized to remain in the United States until October 2002. Lei lost that status in June 2001 when he divorced Liu.

Putri was admitted to the United States in June 2001 as a nonimmigrant visitor. Lei and Putri were married about a year later, eleven days after her visa expired. A month later, Lei filed an application for asylum, withholding of removal, and relief under the Convention, and listed Putri as a derivative applicant. In the application, Lei sought asylum based on his political opinion. Lei alleged that the Chinese government had told his relatives in China that Lei would be

2

incarcerated in retaliation for "subversive" articles that he had published in 1999 on the internet and for his participation in the Chinese Democracy and Justice Party and the China Democracy Party. In a credible fear interview, Lei stated that Liu divorced him because their relationship had deteriorated.

At the removal hearing, Lei testified that he had demonstrated against the Chinese government in June 1989. Lei could not confirm that the government was aware of his participation, but he alleged that he had been punished by being forced to pay tuition to attend a university. Ten years later, when Lei was in the United States, Lei joined the China Democracy Party and the Democracy and Justice Party. Lei published about ten articles on the Democracy and Justice Party website that distinguished between democracy and dictatorship, but he became "less productive" after he started a family with Putri in 2001. Lei withdrew from both organizations in 2004, but rejoined the Democracy and Justice Party in 2005.

Lei alleged that he was afraid to return to China because the government knew of his political activities. Lei testified that the Chinese government had threatened to withhold retirement benefits from his former mother-in-law because of Lei's internet articles and that his political activities had "contributed to his divorce." Lei also testified that members of the Democracy and Justice Party had been arrested and deported. Despite Lei's alleged fear of the Chinese government, Lei admitted that he had twice renewed his Chinese passport through the Chinese

3

consulate and had filed with and obtained his divorce under Chinese law through the Chinese Embassy.

In support of his allegation of future persecution, Lei introduced an unsigned letter he had received one week before his asylum hearing that stated that a government official had shown one of Lei's internet articles to the unidentified author of the letter. Lei also offered the 2005 State Department report on China, which stated that the government had harassed, detained, and imprisoned "those perceived as threatening to government authority"; had denied due process to political dissidents; and had imprisoned activists who had made internet postings. The report stated that the China Democracy Party had been banned by the government and its members had been imprisoned. The report did not mention the Democracy and Justice Party.

The immigration judge denied Lei's application. The immigration judge found that Lei's application for asylum was untimely, Lei did not qualify for an exception to the filing period and, in the alternative, the application failed on the merits. The judge found that Lei had "limited credibility," had "obviously embellish[ed]" his allegations, and that there were "discrepancies" between Lei's application and his testimony. The judge also found that Lei had failed to offer evidence to corroborate his allegation that the Chinese government was aware of Lei's activities and gave only "limited weight" to the letter, which the judge found

4

was "requested" by Lei and contained "puffery." The immigration judge found that Lei did not have a well-founded fear of future persecution. The judge found that Lei had failed to establish that other members of his political organization had been persecuted or that he faced persecution for his activities. The judge also found that Lei did not prove that he faced torture upon return to China.

The Board of Immigration Appeals dismissed the appeal by Lei and Putri. The Board "agree[d] with the Immigration Judge" that Lei's application for asylum was untimely and found that Lei and his wife had failed to "establish extraordinary circumstances" to excuse the untimely application. The Board also affirmed the findings of the immigration judge that Lei was not eligible for withholding of removal or relief under the Convention.

## II. STANDARDS OF REVIEW

We review de novo our subject-matter jurisdiction. Brooks v. Ashcroft, 283 F.3d 1268, 1272 (11th Cir. 2002). We review the decision of the Board to determine whether it is "supported by reasonable, substantial, and probative evidence on the record considered as a whole." Al Najjar v. Ashcroft, 257 F.3d 1262, 1284 (11th Cir. 2001). "To reverse [those] fact findings, we must find that the record not only supports reversal, but compels it." Mendoza v. U.S. Att'y Gen., 327 F.3d 1283, 1287 (11th Cir. 2003). We review the legal conclusions of the Board de novo. Id. at 1287 n.6. When the Board adopts the findings of the

5

Immigration Judge, we review the decision of the Immigration Judge. <u>Al Najjar</u>, 257 F.3d at 1284.

## III. DISCUSSION

Lei contends that the immigration judge and the Board erroneously denied his application for asylum, request for withholding of removal, and relief under the Convention. We are without jurisdiction to review the denial of Lei's application for asylum as untimely, and substantial evidence supports the decision that Lei is not entitled to withholding of removal or relief under the Convention.

### A. We Lack Jurisdiction to Review Lei's Application for Asylum.

An application for asylum must be "filed within 1 year after the date of the alien's arrival in the United States," 8 U.S.C. § 1158(a)(2)(B), and "[n]o court [has] jurisdiction to review any determination" that the application was untimely or that there were changed or extraordinary circumstances that excused the delay, <u>id.</u> § 1158(a)(3). This Court lacks jurisdiction to review the findings of the immigration judge and the Board that Lei's asylum application was untimely. <u>Delgado v. U.S. Att'y Gen.</u>, 487 F.3d 855, 860 (11th Cir. 2007) (per curiam); <u>Chacon-Botero v. U.S. Att'y Gen.</u>, 427 F.3d 954, 957 (11th Cir. 2005) (per curiam). Because only claims for withholding of removal remain and the regulations for these forms of relief do not provide for derivative benefits, we deny the petition to Putri. <u>See</u> 8 C.F.R. § 208.16(c); <u>Delgado</u>, 487 F.3d at 862.

6

*B. Substantial Evidence Supports the Finding That Lei Is Not Entitled to Withholding of Removal or Relief Under the Convention.*

Lei challenges the decision of the immigration judge to deny his applications for withholding of removal. Lei complains that the immigration judge did not make an explicit finding of credibility. Lei also argues that substantial evidence does not support the findings that he failed to establish a likelihood of persecution or torture if he returns to China.

To be considered an adverse credibility determination, the Board must state that the applicant's testimony was not credible. See Yang v. U.S. Att'y Gen., 418 F.3d 1198, 1201 (11th Cir. 2005). When the Board fails to state explicitly that it finds the applicant not credible, we "assume that any credibility determinations . . . were not dispositive of the appeal." Id. (emphasis in original). Although it is unclear how much weight the immigration judge assigned to credibility during its review of Lei's application, the Board "assum[ed] the veracity of [Lei's] testimony" when it considered Lei's application. Credibility is not an issue before this Court. Lei's testimony is accepted as true.

Substantial evidence supports the decision that Lei failed to prove a likelihood of persecution or torture upon his return to China. According to Lei, he was forced to pay tuition for what would otherwise be a government-paid education, but this penalty is not sufficient to establish persecution. Cf. Yang, 418

7

F.3d at 1203 (a single fine imposed under Chinese family planning laws does not constitute persecution). The record also does not compel a finding that Lei presented "'specific, detailed facts showing a good reason to fear that he . . . will be <u>singled out</u> for persecution. . . .'" <u>Mohammad v. U.S. Att'y Gen.</u>, ___ F.3d ___, No. 07-11605 (11th Cir. Nov. 5, 2008) (quoting <u>Al Najjar</u>, 257 F.3d at 1287). Lei submitted evidence that activists of the China Democracy Party were arrested and detained, but Lei admittedly discontinued his political activity in 2004. Lei submitted evidence that prominent activists were incarcerated for posting anti-government sentiments on the internet, but Lei did not establish that he would be singled out for persecution for his publications. Although Lei submitted an unsigned letter written purportedly by a sibling that stated that government officials had shown family members an article Lei had published, there was no threat of persecution mentioned in the letter. <u>See</u> <u>Sepulveda v. U.S. Att'y Gen.</u>, 401 F.3d 1226, 1231 (11th Cir. 2005) (per curiam) (persecution requires "'more than a few isolated incidents of verbal harassment or intimidation'") (quoting <u>Gonzalez v. Reno</u>, 212 F.3d 1338, 1355 (11th Cir. 2000)). The letter instead establishes that Lei has family in China who apparently have not been threatened or harmed. <u>See</u> <u>Ruiz v. U.S. Att'y Gen.</u>, 440 F.3d 1247, 1259 (11th Cir. 2006).

## IV. CONCLUSION

We **DENY** the petition to Putri. We **DISMISS** the portion of Lei's petition challenging the timeliness of his application for asylum and **DENY** the portion of the petition challenging the denial of withholding of removal.

**PETITION DENIED IN PART, DISMISSED IN PART.**