[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 09-13146
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEBRUARY 23, 2010
JOHN LEY
CLERK

Agency Nos. A098-739-989,
A098-739-990

ALBERTO ARAGON RUIZ,
JUAN DAVID ARAGON TORRES,
OSCAR ALBERTO ARAGON TORRES,

Petitioners,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(February 23, 2010)

Before BIRCH, HULL and KRAVITCH, Circuit Judges.

PER CURIAM:

Alberto Aragon Ruiz ("Aragon") and his sons, Juan David Aragon Torres and Oscar Alberto Aragon Torres, petition for review of the Board of Immigration Appeals's (BIA's) decision affirming the Immigration Judge's (IJ's) denial of their application for asylum and withholding of removal under the Immigration and Nationality Act ("INA"), and protection under the Convention Against Torture ("CAT").[1] Aragon, a citizen of Colombia, claimed past persecution and a well-founded fear of future persecution by the Revolutionary Armed Forces of Colombia ("FARC") based on his membership in the Conservative Party and his participation in social brigades. After review, we dismiss in part and deny in part the petition for review.

To establish eligibility for asylum, an applicant must show either past persecution or a well-founded fear of future persecution on account of race, religion, nationality, membership in a particular social group, or political opinion. INA § 101(a)(42); 8 U.S.C. § 1101(a)(42)(A); Sepulveda v. U.S. Att'y Gen., 401

---

[1]Aragon's two sons were included on the asylum application as derivative beneficiaries. Although our opinion refers only to Aragon, our holding as to the asylum and CAT claims applies equally to his sons. We deny the sons' withholding of removal claim, because "there are no derivative benefits associated with a grant of withholding of removal." See Delgado v. U.S. Att'y Gen., 487 F.3d 855, 862 (11th Cir. 2007). Further, Aragon has abandoned any challenge to the denial of CAT relief, as he has failed to offer substantive argument on this claim or cite applicable law in his appeal brief. See Sing v. U.S. Att'y Gen., 561 F.3d 1275, 1278 (11th Cir. 2009) (noting that when an appellant fails to offer argument on an issue, or makes only passing references to the issue, the issue is deemed abandoned). Thus, the only claims we address are the petitioners' joint claim for asylum and Aragon's claim for withholding of removal.

F.3d 1226, 1230-31 (11th Cir. 2005); 8 C.F.R. § 208.13(a), (b).[2]  In determining whether an applicant suffered past persecution, the BIA considers the cumulative impact of the alleged incidents of mistreatment.  Delgado v. U.S. Att'y Gen., 487 F.3d 855, 861 (11th Cir. 2007).

Although the INA does not define persecution, this Court has recognized that it is "an extreme concept requiring more than a few isolated incidents of verbal harassment or intimidation."  Ruiz v. Gonzales, 479 F.3d 762, 766 (11th Cir. 2007) (quotation marks omitted).  Accordingly, this Court has concluded that threats in conjunction with brief detentions or a minor physical attack that does not result in serious physical injury do not rise to the level of persecution.  See, e.g., Djonda v. U.S. Att'y Gen., 514 F.3d 1168, 1174 (11th Cir. 2008) (36-hour detention, beating and threat of arrest); Zheng v. U.S. Att'y Gen., 451 F.3d 1287, 1290-91 (11th Cir. 2006) (5-day detention).[3]

---

[2]Similarly, an alien seeking withholding of removal must show that it is more likely than not that she will be persecuted on account of race, religion, nationality, membership in a particular social group, or political opinion upon being returned her country.  INA § 241(b)(3), 8 U.S.C. § 1231(b)(3); Sepulveda, 401 F.3d at 1232.  Because this standard is more stringent than the standard for asylum, an alien who fails to establish asylum eligibility generally cannot satisfy the higher burden for withholding of removal.  Id. at 1232-33.

[3]Because the BIA adopted the IJ's reasoning as to Aragon's statutory eligibility, we review both the BIA's and the IJ's decisions.  See Al Najjar v. Ashcroft, 257 F.3d 1262, 1284 (11th Cir. 2001).  We review the factual determination that an alien is statutorily ineligible for asylum or withholding of removal under the "highly deferential" substantial evidence test, which requires that we affirm the BIA's decision if it is "supported by reasonable, substantial, and probative evidence on the record considered as a whole."  Id. (quotation marks omitted).  Thus, we reverse "only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings."  Mehmeti

3

Here, we cannot say that the evidence compels the conclusion that Aragon suffered past persecution. According to Aragon's asylum application and credited hearing testimony, while Aragon was participating in the brigades in 1998 and 1999, the FARC approached him two times, ordered him to stop and threatened him. Aragon stopped working with the brigades, but resumed again in June 2003.

In February 2004, armed FARC members stopped Aragon after a social brigade, took down information from his citizenship card and forced him to leave the area. In April 2004, after another social brigade in the mountains, Aragon was detained by the FARC, driven to the top of a mountain, interrogated about the social brigades and then released unharmed.[4] Shortly thereafter, Aragon began receiving threatening phone calls.

In May 2004, the FARC kidnapped Aragon's oldest son, Oscar, as he was leaving university classes. The FARC called Aragon and explained that they wanted to show him they were serious and they could hurt him if they wanted to. Oscar was released unharmed two hours later a few blocks from his house. On June 13, 2004, Aragon sent Oscar to live with his sister in Miami.

---

v. U.S. Att'y Gen., 572 F.3d 1196, 1199 (11th Cir. 2009).

[4]Although Aragon did not present evidence of the length of this detention, from his application and testimony, it appears he was released as soon as the interrogation was over and thus that he was not detained for very long.

The threatening phone calls continued. The FARC told Aragon that, like his son, he should leave the country or they "would continue with [his] other children . . . ." Aragon sent his three remaining sons to live with relatives outside Cali. On February 22, 2005, Aragon and his youngest son, Juan, left for the United States. Aragon's other two sons remained with relatives in Colombia until May 2006, when they went to live with their mother in Spain.[5]

These threats and brief detentions, which did not result in any harm, fall short of the extreme mistreatment found in other cases in which this Court has concluded that the record compelled a conclusion that the petitioner was persecuted. See, e.g., De Santamaria v. U.S. Att'y Gen., 525 F.3d 999, 1008-10 (11th Cir. 2008) (involving repeated death threats, torture and murder of petitioner's groundskeeper, assault resulting in hospitalization, kidnapping and beating with guns resulting in hospitalization); Niftaliev v. U.S. Att'y Gen., 504 F.3d 1211, 1215-17 (11th Cir. 2007) (involving threats, numerous interrogations and beatings during a 15-day detention that resulted in two-month hospitalization, and two subsequent physical attacks after petitioner fled to Argentina); Mejia v. U.S. Att'y Gen., 498 F.3d 1253, 1257-58 (11th Cir. 2007) (involving written threats and "condolence" letter, assault with a rock and detention at gunpoint,

---

[5]Aragon could not take his two middle sons to the United States because they did not have visas. Aragon left for the United States with Juan, who was a minor, as soon as Aragon received permission from his ex-wife to take Juan out of the country.

during which petitioner was thrown to the ground and hit with a gun, breaking his nose and requiring surgery); Sanchez Jimenez v. U.S. Att'y Gen., 492 F.3d 1223, 1233 (11th Cir. 2007) (involving attempted murder of petitioner, attempted kidnapping of his daughter, and death threats); Delgado v. U.S. Att'y Gen., 487 F.3d 855, 861-62 (11th Cir. 2007) (involving threatening phone calls, car vandalization, detention by masked men who pointed and mock fired unloaded guns at petitioners, and a severe beating requiring medical treatment).

Both Aragon's own detention and the kidnapping of his son were relatively brief and in both instances the FARC released them voluntarily. Neither Aragon nor anyone else connected to him suffered any physical harm. Although we have never held that physical harm is a prerequisite to finding persecution, the conditions under which Aragon and his son were detained did not have the kind of apprehension of imminent serious physical harm or death that this Court has held was persecution even absent physical harm. See Sanchez Jimenez, 492 F.3d at 1233 (concluding that attempted murder in which FARC shot at alien while he traveled in his car was "sufficiently extreme" to constitute persecution despite lack of physical injury).

Because Aragon did not establish past persecution, he was not entitled to a presumption that he has a well-founded fear of future persecution. See Mejia v. U.S. Atty. Gen., 498 F.3d 1253, 1257 (11th Cir. 2007). To show a well-founded

6

fear of future persecution, an alien must show "that there is a reasonable probability of suffering such persecution if he or she were to return to that country." Id. at 1256. Absent a presumption, the IJ concluded that the events that did not constitute past persecution also did not support a claim of a well-founded fear and that any fear was further attenuated by the passage of time.

Furthermore, the fact that the FARC is present throughout Colombia, and beyond the control of Colombian authorities, does not necessarily indicate that if Aragon returned to Colombia the FARC would show a particular interest in him. Indeed, Aragon presented no evidence that the FARC has continued to look for him or threaten him or his family in Colombia. Moreover, as the BIA recognized, there is evidence that Aragon made numerous business trips to the United States after the FARC threats began in 1999. The last of these trips occurred in August 2004, after his April 2004 detention and his son's May 2004 kidnapping. See De Santamaria, 525 F.3d at 1011 ("An asylum applicant's voluntary return to his or her home country is a relevant consideration in determining whether the asylum applicant has a well-founded fear of future persecution."). Under the circumstances, we cannot say the evidence compels a conclusion that Aragon had a well-founded fear of persecution.

Because Aragon did not establish either past persecution or a well-founded fear of future persecution, he did not demonstrate eligibility for asylum. See

7

Mehmeti, 572 F.3d at 1199. Having failed to demonstrate eligibility for asylum, it follows that Aragon was similarly ineligible for withholding of removal. See Silva v. U.S. Att'y Gen., 448 F.3d 1229, 1243 (11th Cir. 2006). Accordingly, we deny Aragon's petition as to his claims of asylum and withholding of removal and dismiss his petition as to the denial of CAT relief.

**PETITION DISMISSED IN PART AND DENIED IN PART.**