[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 25, 2007
THOMAS K. KAHN
CLERK

_____

No. 05-16419

_____

BIA Nos. A77-006-166 & A97-209-929

RAMON ANTONIO DELGADO,
CARMEN YELITZA DELGADO,
RAMON ANTONIO DELGADO MAZA,

                                Petitioners,

versus

U.S. ATTORNEY GENERAL,

                                Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

**(May 25, 2007)**

Before BARKETT and KRAVITCH, Circuit Judges, and TRAGER,[*] District
Judge.

PER CURIAM:

---

[*] Honorable David G. Trager, United States District Judge for the Eastern District of
New York, sitting by designation.

Ramon Antonio Delgado ("Delgado"), his wife Carmen Yelitza Delgado ("Carmen"), and their adult son Ramon Delgado ("Ramon") (collectively "the Delgados"), natives and citizens of Venezuela, petition this court for review of the Board of Immigration Appeals's ("BIA") affirmance of the Immigration Judge's ("IJ") orders of removal and denials of asylum and withholding of removal, 8 U.S.C. §§ 1158, 1231.[1] In their petition for review, they challenge (1) the determination that their asylum applications were untimely, (2) the denial of withholding of removal relief, and (3) the denial of derivative benefits for Carmen. After oral argument and a review of the record, we dismiss the petition as to the first issue, and grant the petition as to the second. The final issue before us is one of first impression in this circuit: whether a petitioner's spouse is eligible for derivative benefits under the withholding statute. We conclude that she is not; accordingly, we deny the petition on this ground.

## I. Background

Delgado, Carmen, and Ramon were admitted to the United States on different days in 1999. Each remained beyond the expiration period of his or her visa and received notices to appear charging them with removability. Delgado and

---

[1] The Delgados initially requested relief under the United Nations Convention Against Torture ("CAT"). The IJ and BIA denied relief, and the Delgados do not challenge this decision. Therefore, they have abandoned the issue and we do not discuss it further. Sepulveda v. U.S. Att'y Gen., 401 F.3d 1226, 1228 (11th Cir. 2005).

Ramon filed separate applications for asylum in 2003. Carmen proceeded as a beneficiary of Delgado's application. The applications were consolidated before the IJ.

The basis for the requested relief is as follows according to Delgado's and Ramon's testimony at the removal hearing: In 1997, Delgado, a former military official, and Ramon participated briefly in an organization supporting Venezuelan Presidential candidate Hugo Chavez led by retired military personnel. After attending three meetings, Delgado learned that the organization planned to use violence to achieve its goals, and he denounced the organization and spoke out against the use of violence. In March 1998, he received several threatening phone calls. Thereafter, two unknown masked men approached Delgado and Ramon, pointed what turned out to be unloaded guns at them, and pulled the triggers. These men warned Delgado and Ramon that they would be dead if they continued to speak out. Delgado reported the incident to the police.

In the following weeks, on two separate occasions, Delgado discovered that the brakes on his car had been cut, his tires were slashed, his windows were broken, and someone vandalized his car with political graffiti. Both of these incidents occurred while the car was parked in his housing complex. Again, Delgado reported these incidents to the police.

Delgado continued to receive threatening calls, and in May 1998, five

unknown men attacked Ramon, who was beaten until he was almost unconscious. The men told Ramon that there would be further consequences if Delgado continued his political activities. Ramon received medical treatment, and Delgado reported this incident to the police. Delgado ultimately decided that the family had to leave Venezuela, and he and his family came to the United States in August 1998, but they remained only a short time before Delgado and Carmen returned to Venezuela. Ramon stayed in the United States except for a brief trip back home. Back in Venezuela, Delgado went into hiding but re-entered the United States in October 1998, this time leaving Carmen in Venezuela. Delgado returned to Venezuela in March 1999, where he found another threatening message on his answering machine. Realizing he was still in danger, Delgado returned to the United States in April 1999; Carmen returned in December 1999. Ramon had re-entered the United States in February 1999.

Delgado did not apply for asylum immediately, in part because immigration attorneys allegedly had told him that he was not eligible for relief. In 2001, Delgado received an invitation from the Venezuelan Consulate, which he interpreted as a reminder that Chavez's supporters could find him. In 2003, Delgado's attorney in Venezuela received a death threat warning Delgado not to return. The Delgados then filed their applications for asylum, withholding of removal, and CAT relief, attaching the police reports and reports of Ramon's

4

medical treatment following the attack on him.

The IJ denied relief, concluding that the consolidated asylum application was time-barred and that, although Delgado and Ramon were credible, with the exception of the alleged 2003 threat to Delgado's attorney, the events had not established past persecution on account of a protected ground. The BIA affirmed without comment. The Delgados now petition this court for review.

## II. Discussion

The Delgados challenge the IJ and BIA's conclusion that their asylum applications were untimely and that they failed to establish past persecution based on a protected ground. The government responds that we lack jurisdiction to review the timeliness issue, Delgado and Ramon were not entitled to relief, and Carmen was not entitled to derivative benefits. We address each of these in turn.

A. Asylum

We review questions of subject-matter jurisdiction de novo. Brooks v. Ashcroft, 283 F.3d 1268, 1272 (11th Cir. 2002).

An application for asylum must be filed within one year after the date of the alien's arrival in the United States. 8 U.S.C. § 1158(a)(2)(B). Under § 1158(a)(3), this court lacks jurisdiction to consider an untimely application unless the alien can demonstrate extraordinary circumstances relating to the delay in filing an application within the one-year period. See id. § 1158(a)(2)(D); Mendoza v. U.S.

5

Att'y Gen., 327 F.3d 1283, 1287 (11th Cir. 2003). This rule was not altered by the expansion of jurisdiction in the REAL ID Act.[2] See Chacon-Botero v. U.S. Att'y Gen., 427 F.3d 954, 957 (11th Cir. 2005).

Delgado and his family entered the United States for the last time on different dates in 1999, but did not file applications for asylum until June 2003. The IJ determined both that the Delgados failed to comply with the one-year time limit, and that there were no extraordinary or changed circumstances that would toll the one-year statute of limitations. See Mendoza, 327 F.3d at 1287. In their appeal to the BIA, the Delgados did not raise the timeliness issue. Therefore, they have not exhausted it, and we need not consider it. Fernandez-Bernal v. U.S. Att'y Gen., 257 F.3d 1304, 1317 n.13 (11th Cir. 2001).[3] Even if we were to address the issue, timeliness is not a question of law. We, therefore, lack jurisdiction to review the IJ and BIA's decision. Accordingly, we dismiss the petition as to the asylum claims.

B. Withholding of Removal

Where the BIA adopts the IJ's decision, we review the IJ's decision. Al-

---

[2] The Real ID Act of 2005, Pub.L. No. 109-13, 119 Stat. 231.

[3] This panel is bound by this decision unless it is overruled by the U.S. Supreme Court or this court sitting en banc. Smith v. GTE Corp., 236 F.3d 1292, 1300 n.8, 1302-03 (11th Cir. 2001).

Najjar v. Ashcroft, 257 F.3d 1262, 1284 (11th Cir. 2001). Legal determinations are reviewed de novo, and factual findings are reviewed under the substantial evidence test. D-Muhumed v. U.S. Att'y Gen., 388 F.3d 814, 817 (11th Cir. 2004). We must affirm the decision below "if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole." Antipova v. U.S. Att'y Gen., 392 F.3d 1259, 1261 (11th Cir. 2004) (quotation omitted). Under this highly deferential standard of review, denial of relief may be reversed only if the evidence would compel a reasonable fact finder to conclude that the requisite fear of persecution exists. INS v. Elias-Zacarias, 502 U.S. 478, 481 n.1, 112 S.Ct. 812, 815 n.1, 117 L.Ed.2d 38 (1992).

An alien is entitled to withholding of removal under the INA if he can show that his life or freedom would be threatened on account of his race, religion, nationality, membership in a particular social group, or political opinion. Mendoza, 327 F.3d at 1287; see also INA § 241(b)(3), 8 U.S.C. § 1231(b)(3). "An alien bears the burden of demonstrating that he more-likely-than-not would be persecuted or tortured upon his return to the country in question." Mendoza, 327 F.3d at 1287. The alien can meet his burden by showing either: (1) "past persecution in his country based on a protected ground," in which case a rebuttable presumption is created that his life or freedom would be threatened if he returned to his country; or (2) "a future threat to his life or freedom on a protected ground in

7

his country."[4]  Al Najjar, 257 F.3d at 1287.

"[P]ersecution is an extreme concept, requiring more than a few isolated incidents of verbal harassment or intimidation."  Sepulveda v. U.S. Attorney Gen., 401 F.3d 1226, 1231 (11th Cir. 2005) (quotations omitted).  In determining whether an alien has suffered past persecution, the IJ must consider the cumulative effects of the incidents.[5]  Ruiz v. U.S. Att'y Gen., 479 F.3d 762, 766 (11th Cir. 2007).

After a thorough review of the record, we are compelled to conclude that the IJ and BIA erred by denying Delgado and Ramon withholding of removal.

Delgado and Ramon were stopped by masked men who pointed unloaded weapons at them and pulled the triggers.  A few months later, Ramon was attacked and severely beaten.  In both cases, the unknown attackers stated that these events were warnings and there would be consequences for Delgado's political

---

[4]  Where the Delgados experienced past persecution, there is a rebuttable presumption of future persecution, and the burden shifts to the government to show both that (1) relocation is possible within Venezuela, and (2) it is reasonable to expect the Delgados to relocate.  See Arboleda v. U.S. Att'y Gen., 434 F.3d 1220, 1223-24 (11th Cir. 2006).  Regarding the government's contention that, because Chavez has been elected, there no longer would be any threats to the Delgados, the Country Report states that there have been at least a dozen politically motivated killings after Chavez's election.

[5]  The IJ explicitly found that Delgado's claims of threats to his attorney in 2003 were not credible and the Delgados do not specifically challenge this finding on appeal.  Because the Delgados did not raise the issue before the BIA, they have not exhausted it.  INA § 242(d)(1), 8 U.S.C. § 1252(d)(1); Fernandez-Bernal v. U.S. Att'y Gen., 257 F.3d 1304, 1317 n.13 (11th Cir. 2001).  Notably, the IJ found the remainder of Delgado's testimony regarding the other incidents credible.  Thus, we consider those events about which Delgado testified credibly.

opposition. The undisputed testimony indicated that Ramon was attacked as result of his and his father's political opinions. The record therefore compels the conclusion that the attacks were on account of Delgado's political opinion, even though Delgado and Ramon were unable to specifically name or identify the attackers. Cf. Silva v. U.S. Att'y Gen., 448 F.3d 1229 (11th Cir. 2006) (assuming without deciding that the incident in which the unknown gunmen shot at Silva qualified as persecution, but holding that, because Silva testified that she did not know who the gunmen were, the record did not compel the conclusion that she was attacked based upon her political opinion).[6] Although each of the incidents taken separately would not establish persecution, see Sepulveda, 401 F.3d at 1231, when considered together the events compel the conclusion that Ramon and Delgado suffered past persecution due to their political opinions. Ruiz, 479 F.3d at 766. Therefore, we conclude that based on the cumulative effect of the two attacks, the continued threatening calls, and the incidents involving the car, Delgado and Ramon have met their burden. Accordingly, we grant the petition as to Delgado and Ramon.

C. Derivative Benefits

The final issue, and one of first impression in this circuit, is whether the

---

[6] Unlike the facts in Silva, in this case, the attackers made statement showing the motivation of their attacks, and, during the second attack, specifically identified Ramon as Delgado's son before beginning to beat him.

withholding statute provides for derivative benefits for an alien's spouse.

In interpreting a statute, our first step "is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case." D'Angelo v. ConAgra Foods, Inc., 422 F.3d 1220, 1235 (11th Cir. 2005). "Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." Russello v. United States, 464 U.S. 16, 23, 104 S.Ct. 296, 300, 78 L.Ed.2d 17 (1983) (citation and quotations omitted). Also, "[w]here Congress knows how to say something but chooses not to, its silence is controlling." CBS Inc. v. PrimeTime 24 Joint Venture, 245 F.3d 1217, 1226 (11th Cir. 2001) (citing In re Griffith, 206 F.3d 1389, 1394 (11th Cir. 2000) (en banc) (citation and quotations omitted, alteration in original).

Although the asylum statute explicitly creates derivative rights for the spouse of a petitioner, the withholding statute contains no mention of derivative rights. Compare 8 U.S.C. § 1158(b)(3)(A) and 8 C.F.R. §§ 207.7 and 208.21, with 8 U.S.C. § 1231. Congress's silence thus dictates our holding in this case: there are no derivative benefits associated with a grant of withholding of removal. See also Huang v. I.N.S., 436 F.3d 89, 95 (2d Cir. 2006) (denying derivative benefits); Ali v. Ashcroft, 394 F.3d 780, 782 n.1 (9th Cir. 2005) (same).

10

Accordingly, we deny the petition as to Carmen's claim for withholding of removal.

## III. Conclusion.

Based on the foregoing, we **DISMISS** the petition in part as to the asylum claim, we **GRANT** the petition in part as to Delgado's and Ramon's withholding claims, and we **DENY** Carmen's claim for derivative benefits. The BIA's decision is **VACATED** and **REMANDED** for further proceedings consistent with this opinion.