[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 08-15902

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MARCH 3, 2010
JOHN LEY
CLERK

Agency Nos. A088-407-148 & A088-407-149

JOSE AGUSTIN RAMIREZ CALDERON,
ALBA RUTH SANCHEZ VARGAS,

                                        Petitioners,

versus

U.S. ATTORNEY GENERAL,

                                        Respondent.

_____

Petition for Review of a Final Decision of the
Board of Immigration Appeals

_____

(March 3, 2010)

Before DUBINA, Chief Judge, FAY, Circuit Judge, and EDENFIELD,* District
Judge.

_____

*Honorable B. Avant Edenfield, United States District Judge for the Southern District of
Georgia, sitting by designation.

PER CURIAM:

Jose Agustin Ramirez Calderon ("Ramirez") and his wife Alba Ruth Sanchez Vargas,[1] natives and citizens of Colombia, petition for review of the order by the Board of Immigration Appeals ("BIA") affirming the decision of the Immigration Judge ("IJ"). The decision denied Ramirez asylum and withholding of removal.[2] No reversible error has been shown; we dismiss the petition in part and deny it in part.

We review the BIA's decision in this case because the BIA did not expressly adopt the IJ's decision. *Al Najjar v. Ashcroft*, 257 F.3d 1262, 1284 (11th Cir. 2001). We review legal determinations of the BIA *de novo*. *Id.* A factual determination that an alien is unentitled to relief "must be upheld if it is supported by substantial evidence." *Mazariegos v. U.S. Att'y Gen.*, 241 F.3d 1320, 1323 (11th Cir. 2001). To reverse a factual determination, "we must find that the record not only supports reversal, but compels it." *Mendoza v. U.S. Att'y Gen.*, 327 F.3d 1283, 1287 (11th Cir. 2003).

---

[1]Ramirez included his wife as a derivative in his asylum application.

[2]Ramirez abandons review of the portion of the decision denying relief under the Convention Against Torture because he offers no argument on this claim. *See Sepulveda v. U.S. Attorney Gen.*, 401 F.3d 1226, 1228 n.2 (11th Cir. 2005) (explaining that petitioner abandons an issue by failing to offer argument on that issue).

On appeal, Ramirez challenges the BIA's conclusion that he did not demonstrate extraordinary circumstances excusing his untimely asylum application. We, however, lack jurisdiction to consider "whether an alien complied with the one-year time limit or established extraordinary circumstances that would excuse his untimely filing." *Chacon-Botero v. U.S. Att'y Gen.*, 427 F.3d 954, 957 (11th Cir. 2005) (explaining that we lack jurisdiction, under 8 U.S.C. § 1158(a)(3), to review an untimeliness determination). Ramirez characterizes the alleged error as a due process violation and contends that we have jurisdiction to consider the constitutional claim. We have said the "timeliness of an asylum application is not a constitutional claim or question of law" over which we retain jurisdiction. *Id.* Therefore, we dismiss the petition as to Ramirez's asylum claim for lack of jurisdiction.

We have jurisdiction over Ramirez's petition for withholding of removal. An alien seeking withholding of removal must show that his life or freedom would be threatened because of his race, religion, nationality, membership in a social group, or political opinion. 8 U.S.C. § 1231(b)(3)(A). An alien may meet his burden either by showing past persecution on account of a protected ground or by showing that it is more likely than not that his life or freedom would be threatened in the future if returned to his country of nationality. 8 C.F.R. § 208.16(b).

3

Ramirez, a veterinarian and horse trainer in Colombia, sought relief based on alleged persecution by the Revolutionary Armed Forces of Columbia ("FARC") because of Ramirez's support of the New Liberalism Party. He helped a family friend, Guillermo Gaviria, campaign and win the position of Governor of Antioquia, in 2000, and, after Gaviria took office, Ramirez continued to act as an advisor to Gaviria. Shortly after Gaviria's election, a man named Ivan Jurado bought some horses from Ramirez and asked Ramirez about Gaviria and his family. When Jurado next approached Ramirez about purchasing horses, he identified himself, and the men with him, as members of FARC. FARC told Ramirez that he would not be in danger if he worked for them by giving them information about the Gaviria family and hiring one of their men to work at the Gaviria family's stables. Ramirez refused these requests. He reported the threats to the authorities, but the case was dropped due to fear of FARC retaliation. Ramirez hired bodyguards.

After his refusal to cooperate with FARC, Ramirez began receiving threatening phone calls at his home and office. In May 2003, Ramirez received word that FARC had assassinated Gaviria. Later that year, Ramirez helped Gaviria's brother get elected Governor of Antioquia. FARC members continued to approach Ramirez about cooperating with FARC and continued to threaten him.

4

In September 2004, Ramirez received a letter from FARC stating that a "revolutionary trial" was being conducted against him for the crime of supporting corrupt politicians. Ramirez later received a letter stating that he had been sentenced to death. He then fled to the United States. Sanchez followed nearly one year later.

The BIA determined that Ramirez suffered no past persecution in Colombia and did not demonstrate a future threat to his life or freedom if returned to Colombia. The BIA noted that Ramirez failed to establish that he more likely than not would be persecuted on account of a protected ground if he returned to Colombia, in part, because he based his claim of future persecution almost exclusively on events that occurred before he came to the United States.

After review, we conclude that the record does not compel the conclusion that Ramirez was entitled to withholding of removal. We have explained that "persecution is an extreme concept, requiring more than a few isolated incidents of verbal harassment or intimidation and that mere harassment does not amount to persecution." *Sepulveda*, 401 F.3d at 1231 (alteration and quotation marks omitted). The events Ramirez endured in Colombia—including telephonic threats, threatening face-to-face encounters, and the receipt of a letter sentencing Ramirez to death—are insufficiently extreme to rise to the level of past persecution.

5

Rather, these events are more akin to harassment and intimidation. Although we have noted that serious physical injury is not required, we also have concluded that past persecution existed only where the "petitioner demonstrate[d] repeated threats combined with other forms of severe mistreatment." *De Santamaria v. U.S. Att'y Gen.*, 525 F.3d 999, 1009 (11th Cir. 2008).

Ramirez also failed to demonstrate that he more likely than not will experience a future threat to his life or freedom upon returning to Colombia. Ramirez's testimony that FARC members continued to inquire about his whereabouts after he left Colombia was vague and he did not expound on the frequency or content of these inquires. Just as the previous harassment he experienced at the hands of FARC did not compel a finding of past persecution, neither do the continued inquires compel a conclusion that Ramirez faces a future threat to his life or freedom. We deny the petition for withholding of removal.[3]

**PETITION DISMISSED IN PART, DENIED IN PART.**

---

[3]Because Ramirez's wife is a derivative beneficiary and there are no derivative benefits associated with withholding of removal, we deny the petition on his wife's claim for withholding of removal. *See Delgado v. U.S. Att'y Gen.*, 487 F.3d 855, 862 (11th Cir. 2007).