[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAR 5, 2010
JOHN LEY
CLERK

No. 09-13427
Non-Argument Calendar

_____

Agency Nos. A088-151-765
A088-151-766

ERIKA TATIANA WONG DE ABANTO,
DAVID GUSTAVO ABANTO LAMAS,
GUSTAVO ROBERTO ABANTO WONG,
DAVID ALFREDO ABANTO WONG,

Petitioners,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(March 5, 2010)

Before BLACK, HULL and ANDERSON, Circuit Judges.

PER CURIAM:

Erika Tatiana Wong de Abanto, a citizen of Peru, petitions for review of the Board of Immigration Appeals's ("BIA") decision affirming the Immigration Judge's ("IJ") order denying her application for asylum and withholding of removal under the Immigration and Nationality Act ("INA") and for relief under the United Nations Convention Against Torture ("CAT"). After review, we dismiss in part and deny in part the petition.

## I. BACKGROUND

On May 10, 2005, Wong de Abanto and her family were admitted to the United States on non-immigrant visitor visas and stayed past November 9, 2006, the date their visas expired. On December 4, 2006, Wong de Abanto filed her asylum application.[1] Wong de Abanto claimed that she had been persecuted in Peru by a rebel group called Shining Path[2] because of her political opinion.[3] The

---

[1]Wong de Abanto's husband, David Gustavo Abanto-Lamas, and their two sons, Gustavo Roberto Abanto Wong and David Alfredo Abanto Wong, were included on her asylum application as derivative beneficiaries. Although our opinion refers to Wong de Abanto, our holding as to the asylum claim applies equally to her family. As to the withholding of removal claim, "there are no derivative benefits associated with the grant of withholding of removal." Delgado v. U.S. Att'y Gen., 487 F.3d 855, 862 (11th Cir. 2007). Thus, we deny the petition as to her family's claim of withholding of removal on that basis.

[2]The U.S. State Department's 2007 Country Report on Human Rights Practices in Peru states that Shining Path is a terrorist organization linked to narcotics trafficking. According to the report, during 2007, Shining Path killed several police officers and sometimes established roadblocks in certain regions of Peru. The report did not contain any incidents of politically motivated violence, harassment or extortion by Shining Path.

[3]In Wong de Abanto's asylum application, the box for "membership in a particular social group" persecution was also checked. However, Wong de Abanto never advanced this ground before the IJ or the BIA and has not raised it in this Court.

Department of Homeland Security served Wong de Abanto with a Notice to Appear ("NTA"), charging her with removability. Wong de Abanto admitted the allegations in the NTA and conceded removability.

According to Wong de Abanto's asylum application and hearing testimony, Wong de Abanto began working for the Bank of Credit in Peru in 1994. She was an active member of President Alberto Fujimori's Cambio 90 New Majority Party from 1995 until 2000. As such, Wong de Abanto participated in vaccination and Christmas campaigns and eventually became the party's Coordinator of Events and Social Promotion. She indirectly participated in President Fujimori's political movement by collecting reports from rice farmers who were bank clients. Wong de Abanto's active involvement in the Cambio 90 New Majority Party ended in 2000, which was when President Fujimori's administration ended.

In 2003, Wong de Abanto was promoted to branch manager and was transferred to the bank's office in Leguia, Peru. Shortly after, on October 6, 2003, Wong de Abanto received a phone call from a member of Shining Path demanding that she give the group information about the bank's big agriculture and business clients who had helped the government. When Wong de Abanto did not provide the information, Shining Path began calling her at home, prompting her to move to her mother's house.

3

On November 4, 2003, three men kidnapped Wong de Abanto as she left work in a taxi cab. The men held a gun at her neck and blindfolded her. The men called her a "damn piece of shit Chinese," and told her that she "was going to cooperate now and that's what happens to traitors" and that "[t]his is happening to you for not collaborating with our cause and for not helping in the release of President Gonzalo, fucking sold to the imperialism." When they reached the countryside, the men removed Wong de Abanto from the taxi and forced her into a chair. The group's leader identified himself as the chief of "Proseguir," a faction of Shining Path. The chief pulled Wong de Alberto's hair, rubbed his hands between her legs, and forced what she believed was a weapon into her mouth. The chief spoke into her ear, telling her that if she did not give them the information they demanded, they would abduct her son, take him into the jungle and indoctrinate him with their Marxist ideology.

According to Wong de Abanto, the men knew that she had worked with the Cambio 90 New Majority Party and "that because of [her] position in the Bank, [she] had clear access to the personal and commercial information of the clients." The men wanted Wong de Abanto to give them names, addresses and bank statements of important clients who had been supported by the government. The men returned Wong de Abanto to the taxi and, during the ride back, told her they would be watching her and warned her not to go to the police.

4

Over the next several months, Wong de Abanto moved and transferred bank offices twice, but still received threatening phone calls at work and at home. Beginning in early 2005, the harassment intensified. Someone would knock on the door of the family home in the middle of the night and leave before it was answered. On February 16, 2005, Wong de Abanto's husband answered the door and found a dead dog with a rope tied around its neck. On another occasion in March 2005, Wong de Abanto found her door painted red with a sickle and hammer, the symbol of Shining Path. On April 24, 2005, Wong de Abanto received a phone call and was told she was going to end up like the dog and that this was how traitors, imperialists and "people who are with . . . Fujimori" end up. This last phone call precipitated the family's decision to leave Peru. Since leaving, Wong de Abanto's mother in Peru has received threatening phone calls indicating that "they" know Wong de Abanto is with the "gringos" and that when she returns to Peru they will give her a "warm welcome."

Although the IJ credited Wong de Abanto's testimony, the IJ denied all relief. The IJ concluded that Wong de Abanto was statutorily ineligible for asylum or withholding of removal because she had not shown a nexus between Shining Path's mistreatment of her and any of the five protected grounds. The IJ concluded that "this is a case of extortion" and that Shining Path's interest in Wong de Abanto was because of the information she could obtain through her position at the

5

bank and not because of her political activity. The IJ denied CAT relief because Shining Path was a terrorist group not connected to the government.

The BIA agreed that Wong de Abanto had failed to show the required nexus and dismissed her appeal. The BIA concluded that Wong de Abanto had not shown that the harm she suffered from Shining Path "was other than criminal in nature . . . ." The BIA agreed with the IJ that the record showed Shining Path's interest in Wong de Abanto "was due to her position at the bank and her access to account information" and that the harm she suffered was because she had not cooperated with Shining Path's demand for information, rather than because of her political opinion. The BIA further concluded that Shining Path's references to traitors and to her past support of President Fujimori were "'incidental' or 'tangential' in nature and insufficient to relate her experiences to a statutorily protected ground." The BIA stated that "any fear of the Shining Path upon return to Peru is similarly lacking the required nexus to a statutorily protected ground." Wong de Abanto filed this petition for review.[4]

## II. DISCUSSION

---

[4]On appeal to this Court, Wong de Abanto does not challenge the denial of her CAT claim. Thus, we do not address this claim. See Kazemzadeh v. U.S. Att'y Gen., 577 F.3d 1341, 1352 (11th Cir. 2009) (deeming abandoned petitioner's CAT claim to which petitioner's brief made only a passing reference).

To establish eligibility for asylum, an applicant must show either past persecution or a well-founded fear of future persecution on account of race, religion, nationality, membership in a particular social group, or political opinion. INA § 101(a)(42); 8 U.S.C. § 1101(a)(42)(A); Sepulveda v. U.S. Att'y Gen., 401 F.3d 1226, 1230-31 (11th Cir. 2005); 8 C.F.R. § 208.13(a), (b).[5] Under the REAL ID Act of 2005, an asylum applicant must demonstrate that one of the protected grounds "was or will be at least one central reason" for the persecution. INA § 208(b)(1)(B)(i), 8 U.S.C. § 1158(b)(1)(B)(i) (emphasis added); see Pub. L. No. 109-13, § 101(a)(3), 119 Stat. 231, 202 (2005) (amending 8 U.S.C. § 1158).[6]

An applicant who claims persecution on account of her political opinion must show that she was or will be persecuted because of her own actual or imputed political opinion, not because of her persecutor's political motives. I.N.S. v. Elias-Zacarias, 502 U.S. 478, 482, 112 S. Ct. 812, 816 (1992); Sanchez v. U.S. Att'y Gen., 392 F.3d 434, 437-38 (11th Cir. 2004). Consequently, to establish

---

[5]Similarly, an alien seeking withholding of removal must show that it is more likely than not that she will be persecuted on account of race, religion, nationality, membership in a particular social group, or political opinion upon being returned her country. INA § 241(b)(3), 8 U.S.C. § 1231(b)(3); Sepulveda, 401 F.3d at 1232. Because this standard is more stringent than the standard for asylum, an alien who fails to establish asylum eligibility generally cannot satisfy the higher burden for withholding of removal. Id. at 1232-33.

[6]The REAL ID Act applies to all applications filed after May 11, 2005, the date the REAL ID Act was enacted. See Pub. L. No. 109-13, § 101(h)(2), 119 Stat. at 305-06. Because Wong de Abanto's application was filed on December 4, 2006, the REAL ID Act's provisions apply to her case.

persecution by a guerilla group on account of political opinion, it is not enough to show that the applicant has been or will be targeted "due to her refusal to cooperate with the guerillas." Sanchez, 392 F.3d at 438 (involving counselor who worked to rehabilitate young gang members and delinquents who refused to meet and cooperate with the FARC); see also Rodriguez Morales v. U.S. Att'y Gen., 488 F.3d 884, 891 (11th Cir. 2007) (involving dentist who refused to provide dental services to the FARC).

Further, evidence of acts of private violence or criminal activity do not demonstrate persecution on a protected ground. Ruiz v. U.S. Att'y Gen., 440 F.3d 1247, 1258 (11th Cir. 2006). Thus, being targeted by a guerilla group for extortionate purposes is not persecution on account of political opinion. See Rivera v. U.S. Att'y Gen., 487 F.3d 815, 821-22 (11th Cir. 2007) (involving politically active business owner's refusal to pay the FARC's "war tax"). Finally, under the substantial evidence standard of review, we will reverse the finding that the applicant failed to demonstrate the required nexus only if the record compels a finding to the contrary. See Rodriguez Morales, 488 F.3d at 890.

Here, substantial evidence supports the IJ's and the BIA's findings that Wong de Abanto was a victim of extortion and that the abuse she suffered at the hands of Shining Path was a result of her refusal to give in to their extortionate

8

demands and not because of her actual or imputed political opinion.[7]  Wong de Abanto argues that she presented evidence of a mixed motive.  She contends that Shining Path's central or primary motive was political, but that it was "infused by elements of criminality."  However, the record supports the opposite conclusion – that Shining Path was primarily interested in Wong de Abanto because as bank manager she had access to information it wanted and that any political motive was not a central reason for targeting her.  See INA § 208(b)(1)(B)(i), 8 U.S.C. § 1158(b)(1)(B)(i) (requiring applicant to show that a protected ground "was or will be at least one central reason for persecuting the applicant").

For example, Wong de Abanto repeatedly indicated both at the hearing and in her asylum application statement that Shining Path's purpose in calling and kidnapping her was either to demand the bank account information or threaten her if she continued to refuse to comply.  Wong de Abanto admitted that, apart from the demand for bank account information, Shining Path made no other demands of her.  Although Shining Path appears to have been somewhat aware of Wong de Abanto's political views, there is no evidence that Shining Path demanded that Wong de Abanto cease any political activity.  Indeed, Wong de Abanto testified that she voluntarily had stopped her political activity in 2000, three years before

---

[7]Because the BIA issued its own decision, but agreed with the IJ's reasoning that Wong de Abanto failed to establish a nexus to a statutorily protected ground, we review the decisions of both the IJ and the BIA as to that issue.  See Kazemzadeh, 577 F.3d at 1350.

9

Shining Path showed any interest in her. In short, there is no evidence that Shining Path would have threatened her had she not had access to the bank account information it sought.

Wong de Abanto points to the stray derogatory remarks Shining Path members made about her political allegiance to President Fujimori and expressing displeasure that she had not helped in the release of President Gonzalo. We agree that these remarks, like the remark about Wong de Abanto's Chinese heritage, were just that – stray remarks – and, in light of the record as a whole, do not compel a conclusion that one of Shining Path's <u>central</u> reasons for targeting Wong de Abanto was her political opinion.

In sum, we cannot say that the evidence compels a finding that Wong de Abanto's actual or imputed political opinion "was or will be at least one central reason" for Shining Path's persecution. <u>See</u> INA § 208(b)(1)(B)(i); 8 U.S.C. § 1158(b)(1)(B)(i). Because Wong de Abanto failed to carry her lower burden of proof with regard to asylum, she is also ineligible for withholding of removal. Accordingly, we deny her petition as to her claims of asylum and withholding of removal and dismiss her petition to the extent she challenges the denial of CAT relief.

**PETITION DISMISSED IN PART AND DENIED IN PART.**