[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 11, 2011
JOHN LEY
CLERK

No. 10-11467
Non-Argument Calendar
_____

Agency No. A078-061-723


PATRICIA PENA,
JAIRO GONZALEZ,
DANIEL FELIPE GONZALEZ,
LAURA GONZALEZ,

                                                      Petitioners,

versus

U.S. ATTORNEY GENERAL,

                                                      Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(May 11, 2011)

Before BARKETT, MARCUS and FAY, Circuit Judges.

PER CURIAM:

Patricia Pena, Jairo Gonzalez, Daniel Felipe Gonzalez, and Laura Gonzalez, Colombian citizens proceeding *pro se*, petition for review of the Board of Immigration Appeals' ("BIA") decision affirming the Immigration Judge's ('IJ") final order of removal and denying their claims for asylum, withholding of removal, and relief under the United Nations Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment ("CAT"), 8 U.S.C. §§ 1158, 1231, 8 C.F.R. § 208.16(c).[1]   The petitioners argue that the BIA erred by denying their claims for asylum and withholding of removal.  Pena also asserts that the BIA failed to make a *de novo* determination regarding her claim for CAT relief.  She contends that she presented credible evidence that she and her family will be tortured if they are removed to Colombia.  For the reasons set forth below, we deny the petition for review.

I.

The Department of Homeland Security issued notices to appear to Pena, her husband Jairo Gonzalez, and her two children, Daniel and Laura Gonzalez,

---

[1]Pena is the lead petitioner, and her husband, Jairo, and children, Daniel and Laura, are derivative applicants.  Jairo, Laura, and Daniel are not entitled to derivative benefits with respect to withholding of removal and CAT relief because those forms of relief do not include derivative rights.  *See Delgado v. U.S. Att'y Gen.*, 487 F.3d 855, 862 (11th Cir. 2007) (explaining that the withholding of removal statute does not create derivative rights); *see also* 8 C.F.R. § 208.16(c) (regulation governing claims for CAT relief does not mention derivative rights).

2

charging that they were removable from the United States. The petitioners admitted the allegations in the notices to appear and conceded removability. Pena filed an application for asylum, withholding of removal, and CAT relief, naming her husband and children as derivative applicants.

At an asylum hearing, Pena testified that her family had been persecuted by the Revolutionary Armed Forces of Colombia ("FARC") because they belonged to the Liberal Party. Pena and her husband, Jairo, had participated in Liberal Party meetings and had campaigned on behalf of the party's candidates. In addition to his political activities, Jairo worked as an accountant. In November 1997, the FARC called Jairo at his place of business and demanded that he supply them with financial information regarding various companies. After Jairo refused to provide the information, the FARC began calling the family's house.

Pena explained that everyone in her family received threatening telephone calls. The guerillas told them that they would be killed or kidnapped if Jairo did not hand over the information that they were seeking. The guerillas also started asking questions about Pena's family at the residential complex where they lived. Pena's family "saw cars parked in front of the apartment with suspicious people" who were watching their movements.

Pena testified that Jairo left Colombia and came to the United States in August 1999. Pena and the children did not go with him at that time because they thought that the threats would stop once Jairo was out of the country. However, the guerillas continued to make harassing calls, stating that they would look for Jairo no matter where he went and that they would kill Pena's family if they did not get the information that they wanted. As a result of these threats, Pena, Laura, and Daniel left Colombia for the United States in November 1999. Initially, they hoped to return to Colombia after a short time, but they later learned from their relatives that the guerillas were still looking for them and that it would not be safe for them to go back. Pena feared that she and her family would be persecuted by the FARC if they returned to Colombia. Jairo Gonzalez also testified at the asylum hearing. His account was consistent with his wife's testimony.

The IJ denied Pena's claims for asylum, withholding of removal, and CAT relief. As an initial matter, the IJ found that Pena's account of her family's mistreatment in Colombia was not credible. The IJ also concluded that Pena had failed to show past persecution or a well-founded fear of future persecution. Regarding past persecution, the IJ observed that Pena and her family were not physically harmed, but rather, merely received "generalized threats. Moreover, the IJ determined that the threats were not connected to one of the grounds for asylum,

4

as the FARC had targeted Jairo because they wanted financial information, not because of his membership in the Liberal Party. The IJ concluded that Pena had not suffered past persecution based on a protected ground.

The IJ also determined that Pena had not established a well-founded fear of future persecution because there was no reason to believe that the FARC were still interested in Jairo and his financial information after he had been out of the country for ten years. Accordingly, the IJ denied Pena's claim for asylum. Because Pena had not met her burden of proof with respect to asylum, the IJ determined that she was unable to meet the higher standard for withholding of removal. Finally, the IJ denied Pena's claim for CAT relief because there was no evidence that she would be tortured with the acquiescence or consent of a Colombian government official. The IJ ordered that the petitioners be removed to Colombia.

Pena appealed to the BIA, but the BIA dismissed her appeal. First, the BIA concluded that the mistreatment that Pena and her family experienced did not rise to the level of past persecution. The BIA observed that neither Pena nor her family were physically harmed in Colombia. In addition, the BIA determined that the incidents described by Pena did not give rise to a well-founded fear of future persecution. The BIA explained that Pena's fear of persecution was undermined

by her testimony and she and her children remained in Colombia for three months after her husband left for the United States. Because Pena had not satisfied her burden of proof with respect to asylum, the BIA concluded that she was unable to meet the higher standard for withholding of removal. The BIA also determined that Pena was not eligible for CAT relief because she failed to show that she would more likely than not be tortured by, or with the acquiescence of, a government official upon her return to Colombia.

## II.

In a case where the BIA issues its own opinion, we review the BIA's decision. *Al Najjar v. Ashcroft*, 257 F.3d 1262, 1284 (11th Cir. 2001). We review the BIA's factual findings to determine whether they are supported by substantial evidence. *Adefemi v. Ashcroft*, 386 F.3d 1022, 1026-27 (11th Cir. 2004) (*en banc*). Under the substantial evidence standard, "we view the record evidence in the light most favorable to the agency's decision and draw all reasonable inferences in favor of that decision." *Id.* at 1027. We may reverse the BIA's factual findings only when the record compels a reversal. *Id.*

An applicant for asylum must demonstrate that she is a refugee. INA § 208(b)(1), 8 U.S.C. § 1158(b)(1); 8 C.F.R. § 208.13(a). An applicant qualifies as a refugee if she suffered past persecution, or has a well-founded fear of future

persecution, in her country of origin. 8 C.F.R. § 208.13(b); *Kazemzadeh v. U.S. Att'y Gen.*, 577 F.3d 1341, 1351 (11th Cir. 2009). To establish past persecution, the applicant must show that she was persecuted in the past on account of a protected ground. 8 C.F.R. § 208.13(b)(1); *Kazemzadeh*, 577 F.3d at 1351.

We have explained that "persecution is an extreme concept, requiring more than a few isolated incidents of verbal harassment or intimidation, and . . . mere harassment does not amount to persecution." *Sepulveda v. U.S. Att'y Gen.*, 401 F.3d 1226, 1231 (11th Cir. 2005) (quotations and alteration omitted). There is no requirement that a petitioner must have experienced physical harm in order to establish persecution. Threats combined with other forms of severe mistreatment can constitute persecution even if the petitioner did not suffer major injuries. *Cf. De Santamaria v. U.S. Att'y Gen.*, 525 F.3d 999, 1009 (11th Cir. 2008) (holding that the record compelled a finding of persecution where the petitioner experienced repeated death threats, two physical attacks, the murder of a family friend, and a kidnapping, even though the petitioner sustained only minor injuries). Nevertheless, the fact that an applicant has received menacing or threatening phone calls, without more, does not compel a finding that the applicant has suffered past persecution. *See Sepulveda*, 401 F.3d at 1231 (concluding that

7

menacing telephone calls to the petitioner and her family did not rise to the level of persecution).

In the absence of past persecution, an applicant may establish a well-founded fear of persecution by showing that there is a reasonable possibility that she will be persecuted if she is returned to her country of origin. 8 C.F.R. 208.13(b)(2); *Kazemzadeh*, 577 F.3d at 1352. The applicant must show that her fear of persecution is "subjectively genuine and objectively reasonable." *Al Najjar,* 257 F.3d at 1289. An applicant can satisfy the objective prong by showing that she "has a good reason to fear future persecution." *Id.* (quotation omitted).

To qualify for withholding of removal, an applicant must establish that her life or freedom would be threatened in her country of origin on account of a statutorily protected ground. *See* INA § 241(b)(3)(A); 8 U.S.C. § 1231(b)(3)(A). The applicant must demonstrate that she would more likely than not be persecuted upon being returned to her country of origin. *Sepulveda*, 401 F.3d at 1232. An applicant who is unable to satisfy the standard for asylum generally will be unable to meet the more stringent standard for withholding of removal. *Id.* at 1232-33.

In this case, substantial evidence supports the BIA's finding that Pena did not suffer past persecution in Colombia. Pena did not present any evidence that the guerillas personally confronted her family or attempted to inflict physical harm on

them. Although she did not have to show that she suffered a physical injury, *see De Santamaria*, 525 F.3d at 1009, she did have to demonstrate that she experienced extreme mistreatment, *see Sepulveda*, 401 F.3d at 1231. We have explained that threatening telephone calls of the sort received by Pena's family do not meet that standard. *See id.* Thus, the record does not compel a finding that the guerillas' menacing behavior towards Pena's family rose to the level of persecution.

Substantial evidence also supports the BIA's finding that Pena did not have a well-founded fear of future persecution. Pena may have a subjective fear that her family will be harmed by the FARC if they return to Colombia, but the record does not compel the conclusion that her fear is objectively reasonable. *See Al Najjar*, 257 F.3d at 1289. Pena's family received the initial threats from the FARC in November 1997, but Pena did not come to the United States until November 1999. During that two-year period, the FARC did not make any attempts to follow through on their threats, even though the guerillas apparently knew where the family was living. It is far from clear that the FARC would be interested in harming Pena's family now, after they have been gone from Colombia for over ten years.

Because the record does not compel a finding that Pena suffered past persecution or has a well-founded fear of future persecution, the BIA properly denied her claim for asylum. *See* 8 C.F.R. § 208.13(b); *Kazemzadeh*, 577 F.3d at 1351;

9

*Adefemi*, 386 F.3d at 1027. Given Pena's inability to meet the standard for asylum, she cannot meet the higher standard for withholding of removal. *See Sepulveda*, 401 F.3d at 1232-33.

### III.

As noted above, we review the BIA's factual determinations to determine whether they are supported by substantial evidence. *Adefemi*, 386 F.3d at 1026-27. To establish eligibility for CAT relief, the applicant must demonstrate that it is more likely than not that she would be tortured if she is removed to the designated country of removal. 8 C.F.R. § 208.16(c)(2). An applicant who is not eligible for asylum generally will be unable to meet the higher standard for CAT relief. *Al Najjar*, 257 F.3d at 1303.

In this case, the BIA expressly addressed Pena's claim for CAT relief. Thus, there is no merit to Pena's argument that the BIA failed to consider that claim. The BIA properly denied Pena's claim for CAT relief because she failed to establish that she would be tortured by, or with the acquiescence of, a government official. The record does not show that the Colombian government supported or acquiesced in the FARC's activities. To the contrary, the Colombian government considers the FARC to be a terrorist organization and is currently engaged in an

armed conflict with that group.  Moreover, as noted above, it is far from clear that the FARC would now be interested in harming Pena and her family.  Because the record does not compel the conclusion that Pena would be tortured by, or with the acquiescence of, a government official, substantial evidence supports the BIA's denial of CAT relief.  *See* 8 C.F.R. § 208.16(c)(2); *Adefemi*, 386 F.3d at 1027.

Accordingly, after review of the administrative record and the parties' briefs, we deny the petition for review.

**PETITION DENIED.**