[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 11-11288
Non-Argument Calendar
_____

Agency No. A078-616-508

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
DECEMBER 28, 2011
JOHN LEY
CLERK

CARLOS EDUARDO CABRERA-NORIEGA,
MARIA JOSE BOTERO DE CABRERA,
JUAN ESTEBAN CABRERA-BOTERO,
ANA SOL BOTERO,
NATALIA REMOLINA-BOTERO,

                                                      Petitioners,

versus

U.S. ATTORNEY GENERAL,

                                                      Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(December 28, 2011)

Before MARCUS, MARTIN, and FAY, Circuit Judges.

PER CURIAM:

Carlos Cabrera-Noriega, a native and citizen of Colombia, petitions for review of the Board of Immigration Appeals's ("BIA") denial of his motion to reopen his removal proceedings under Immigration and Nationality Act § 240(c)(7)(i), (ii), 8 U.S.C. § 1229a(c)(7)(i), (ii). He argues that the BIA abused its discretion in denying his motion, which he does not dispute is untimely, because he showed that the conditions in Colombia had changed. For the reasons set forth below, we deny Cabrera-Noriega's petition for review.

I.

In 1999, Cabrera-Noriega served as a liaison between the National Liberation Army ("ELN") and the family of an ELN kidnaping victim, Alistair Taylor. Cabrera-Noriega and the ELN met 11 times, and the ELN ultimately demanded a $2 million ransom, but Taylor's family could only pay $600,000. Upset that Cabrera-Noriega could not secure $2 million from Taylor's family, the ELN kidnaped him and subjected him to psychological abuse. He was released and ordered to meet with the ELN with the $2 million in ransom. Cabrera-Noriega did not attend the meeting, and the ELN began calling him at home and work. The ELN informed him that he was a military target. In September 2000,

Cabrera-Noriega left Colombia and entered the United States.

Cabrera-Noriega applied for asylum, withholding of removal, and Convention Against Torture ("CAT") relief based on his political opinion. The Immigration Judge denied this application and ordered him removed on September 9, 2008. The BIA dismissed Cabrera-Noriega's appeal on April 23, 2009.

Cabrera-Noriega filed a petition for review, which we denied. *Cabrera-Noriega v. U.S. Att'y Gen.*, 369 F.App'x 5, 7 (11th Cir. 2010). We held that Cabrera-Noriega had not established a nexus between the persecution he alleged and his political opinion. *Id.* at 10. The evidence showed that the ELN harmed Cabrera-Noriega because he failed to obtain a $2 million ransom payment, not because of his political beliefs. *Id.* at 11. Next, we held that Cabrera-Noriega had not established a well-founded fear of future persecution as there was no evidence that he would be persecuted because of his political opinions. *Id.* Finally, we explained that in addition to the lack of evidence connecting any possible harm to his political opinions, there was no evidence that the ELN continued to look for Cabrera-Noriega. *Id.*

On July 1, 2010, Cabrera-Noriega filed a motion to reopen, arguing that he could meet the changed country conditions exception to the filing requirements. He asserted that the ELN had recently grown stronger. Commander Pablito, the

leader in the ELN who had designated him as a military target, had been captured by the Colombian government, but later escaped. Upon his escape, Pablito vowed to eliminate the ELN's enemies. Based on these developments, Cabrera-Noriega argued that Pablito was still looking to kill him and now had more resources available to carry out the killing. According to articles Cabrera-Noriega submitted with his motion to reopen, Carlos Marin Guarin, also known as Pablito, had been arrested. However, Pablito later escaped from custody with the help of ELN rebels. One article stated that the ELN had been declining gradually since 1999. It called the ELN "an almost-forgotten force" compared to the Revolutionary Armed Forces of Colombia, but also stated that Pablito's escape would likely give the ELN renewed energy. Cabrera-Noriega also submitted affidavits from his brother and from a friend. Both individuals believed that Cabrera-Noriega would be killed if he returned to Colombia. Additionally, Cabrera-Noriega's brother stated that, since Pablito's escape, the ELN had contacted him looking for Cabrera-Noriega.

The BIA denied Cabrera-Noriega's motion to reopen, finding that it was untimely and that Cabrera-Noriega had not shown changed country conditions to excuse the untimeliness. He had failed to show that the ELN was becoming more dangerous, as one of the articles he submitted stated that the ELN was gradually

4

declining. Next, the BIA found that Cabrera-Noriega had not shown that Pablito's escape increased the likelihood of Cabrera-Noriega being killed. The BIA did not believe that Cabrera-Noriega was in any more danger than he had been before Pablito was captured and escaped. However, even if Cabrera-Noriega was in more danger, this Court had already determined on review that he had not shown a nexus between any harm and a protected ground. The articles and affidavits attached to the motion to reopen also did not show a connection between any harm and a protected ground. Finally, Cabrera-Noriega had not shown that he would likely face torture by or with the acquiescence of government officials.

## II.

We review the BIA's denial of a motion to reopen under "a very deferential abuse of discretion standard." *Al Najjar v. Ashcroft*, 257 F.3d 1262, 1302 (11th Cir. 2001). Factual findings are reviewed for substantial evidence, which requires "reasonable, substantial, and probative evidence." *Id.* at 1283-84 (quotation omitted).

An alien subject to a final order of removal must file a motion to reopen within 90 days of the removal order being rendered. 8 C.F.R. § 1003.2(c)(2). The time limit does not apply if the motion to reopen is based on changed country conditions, "if such evidence is material and was not available and could not have

5

been discovered or presented at the previous hearing." *Id.* § 1003.2(c)(3)(ii). The BIA may deny a motion to reopen for at least three reasons: (1) the petitioner did not establish a *prima facie* case; (2) the petitioner did not introduce material and previously unavailable evidence; and (3) the BIA may determine "that despite the alien's statutory eligibility for relief, he or she is not entitled to a favorable exercise of discretion." *Al Najjar*, 257 F.3d at 1302. To establish a *prima facie* case of eligibility for asylum, the petitioner must show past persecution due to a statutorily protected factor or a well-founded fear of future persecution due to a statutorily protected factor. 8 C.F.R. § 208.13(b). To establish a *prima facie* case of eligibility for withholding of removal, the petitioner must "show that his life or freedom would be threatened on account of" a statutorily protected factor. *Delgado v. U.S. Att'y Gen.*, 487 F.3d 855, 860-61 (11th Cir. 2007) (citation omitted). Protected factors include "race, religion, nationality, membership in a particular social group, or political opinion." 8 C.F.R. § 208.13(b).

The BIA did not abuse its discretion in denying Cabrera-Noriega's motion to reopen because he failed to establish a *prima facie* case of eligibility for asylum or withholding of removal.[1] *See Al Najjar*, 257 F.3d at 1302. First, the BIA's

---

[1] Cabrera-Noriega has abandoned any argument regarding CAT relief because he failed to make more than a passing reference to such relief in his brief. *See Sepulveda v. U.S. Att'y Gen.*, 401 F.3d 1226, 1228 n.2 (11th Cir. 2005) (explaining that a petitioner abandons an issue where

finding that Cabrera-Noriega had not shown that the ELN was becoming more dangerous was supported by substantial evidence. *See id.* at 1283. Cabrera-Noriega's own supporting evidence stated that, although it was possible that Pablito's escape would re-energize the ELN, the organization had been gradually declining since 1999, the year in which Cabrera-Noriega acted as a liaison between the ELN and Taylor's family.

Next, even if Cabrera-Noriega had shown changed country conditions, he has not shown that they are material. *See* 8 C.F.R. § 1003.2(c)(2)(ii). Both asylum and withholding of removal claims require the petitioner to show that any harm would occur on account of a statutorily protected factor, which is Cabrera-Noriega's political opinion in this case. *See Delgado*, 487 F.3d at 860-61; 8 C.F.R. § 208.13(b). The articles and affidavits that he attached to his motion merely established that Pablito had escaped from custody, the ELN might be gradually declining or might be re-energized by Pablito's escape, and the ELN had contacted Cabrera-Noriega's brother to try to find him. Even assuming *arguendo* that this evidence was sufficient to show the persecution and harm elements of an asylum or withholding of removal claim, it did not establish that Pablito would seek to harm Cabrera-Noriega based on his political opinion. Moreover,

---

he only makes a passing reference to it in his brief).

7

Cabrera-Noriega concedes on appeal that the ELN seeks to harm him because he made Pablito look bad when he did not comply with the order to obtain the ransom money. Therefore, the BIA did not abuse its discretion in denying the motion to reopen because Cabrera-Noriega failed to establish changed country conditions or that any harm he suffered or would suffer in the future was based on his political opinion. *See Al Najjar*, 257 F.3d at 1302.

For the foregoing reasons, we deny Cabrera-Noriega's petition for review.

**PETITION FOR REVIEW DENIED.**