[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 13-13749
Non-Argument Calendar
_____

Agency No. A094-797-137

ETIFWORK BADADA,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(August 8, 2014)

Before ED CARNES, Chief Judge, TJOFLAT and JORDAN, Circuit Judges.

PER CURIAM:

Etifwork Badada, an Ethiopian national, seeks review of the Board of

Immigration Appeals' final order affirming the Immigration Judge's denial of her

application for asylum under the Immigration and Nationality Act (INA) § 208(a), 8 U.S.C. § 1158(a).[1]  Badada challenges the BIA's and IJ's determination that she failed to establish either past persecution or a well-founded fear of future persecution, as required to establish eligibility for asylum.

## I.

Badada entered the United States in May 2006 without being admitted or paroled by an immigration officer.  To prevent her deportation, she applied for asylum based on her political opinion and membership in a particular social group.  She claimed that she had been imprisoned and interrogated by Ethiopia's ruling party, the Ethiopian People's Revolutionary Democratic Front, because of her support for the Coalition for Unity and Democracy Party (CUD), an opposition party.

In May 2008 an IJ denied Badada's application for asylum, finding that she was not credible because her testimony was vague, inconsistent, and implausible in certain respects.  The IJ also found that Badada had not provided enough evidence to corroborate her story.  Badada appealed, and a divided panel of the BIA dismissed that appeal.  It determined that Badada could not carry her burden of proof regardless of whether she was found to be credible.  The dissenting member

---

[1] Badada does not challenge the denial of her applications for withholding of removal and for relief under the United Nations Convention Against Torture.  Those claims are abandoned. See Sepulveda v. U.S. Att'y Gen., 401 F.3d 1226, 1228 n.2 (11th Cir. 2005).

2

of the panel insisted that the BIA should not have reached a conclusion about Badada's ability to meet her burden of proof if she were credible; such a determination had to be made by the IJ in the first instance.

Badada petitioned this Court for review of the BIA's decision. Before we could hear the appeal, the government filed an unopposed motion to remand her case to the BIA so that it could reconsider its decision. The government asked that the IJ be allowed to decide in the first instance whether Badada, if credible, had carried her burden of proof. We granted that motion. See Docket No. 09-15951 (Apr. 21, 2010).

In December 2011 another IJ considered Badada's application for asylum. The IJ conducted a full merits hearing during which Badada testified and the parties were allowed to submit additional documentary evidence. At the end of the hearing, the IJ denied Badada's application. The IJ found that Badada, even if credible, had not proven that she suffered past persecution or that she had a well-founded fear of future persecution. The IJ noted that: "[Badada's] testimony, taken as true, establishes that she was arrested and detained once for about two and a half months. During the detention, she was questioned on two occasions. The more serious questioning occurred about three weeks in. She said that she was hit by soldiers with rubber batons on her legs and back. She was struck four or five times. They also pushed her roughly." The IJ nonetheless concluded that the harm

3

Badada suffered "does not rise to the level of persecution." The IJ explained:

"[Badada] was not harmed in such a way that would lead the Court to find that the one period of detention during which she was beaten four or five times on her legs and back and pushed roughly constitutes persecution. There's no indication that [Badada] needed to be hospitalized after the incident. She remained in detention several more weeks, and there's no indication that the harm that she suffered was so severe so as to rise to the level of persecution." The IJ further found that Badada had not presented enough evidence to show that she had an objective basis to fear future persecution. Although the IJ expressed doubts about Badada's credibility, he did not make an adverse credibility finding.

The BIA dismissed Badada's appeal. Assuming her credibility, the BIA agreed with the IJ that Badada's "account of being detained and mistreated by the authorities did not rise to the level of persecution." It also agreed with the IJ's determination that Badada could not show that she had a well-founded fear of future persecution.

## II.

"We review only the BIA's decision, except to the extent the BIA expressly adopts the IJ's decision." Wu v. U.S. Att'y Gen., 745 F.3d 1140, 1153 (11th Cir. 2014) (brackets and quotation marks omitted). We review factual determinations under the substantial evidence test, "view[ing] the record evidence in the light most

favorable to the agency's decision and draw[ing] all reasonable inferences in favor of that decision." Adefemi v. Ashcroft, 386 F.3d 1022, 1026–27 (11th Cir. 2004). We must affirm the decision if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole. Id. at 1027. To reverse the IJ's and BIA's factfindings, we must find that the record not only supports reversal, but compels it. Id. When the BIA assumes an alien's credibility, so must we. Shi v. U.S. Att'y Gen., 707 F.3d 1231, 1234 (11th Cir. 2013)

To be eligible for asylum, an applicant must establish either past persecution or a well-founded fear of future persecution on account of a statutorily protected ground, including political opinion. See Ruiz v. U.S. Att'y Gen., 440 F.3d 1247, 1257 (11th Cir. 2006); 8 C.F.R. § 208.13(b). A showing of past persecution gives rise to a presumption of a well-founded fear of future persecution, which can be rebutted if the government proves by a preponderance of the evidence that: (1) the conditions in the alien's country have changed or (2) the alien can avoid future persecution by relocating within the country if, "under all the circumstances, it would be reasonable to expect the [alien] to do so." De Santamaria v. U.S. Att'y Gen., 525 F.3d 999, 1012 (11th Cir. 2008); 8 C.F.R. § 208.13(b)(1). Absent past persecution, an alien can qualify for asylum by proving that she has a well-founded fear of future persecution, which requires that she show that her fear is subjectively

genuine and objectively reasonable.  Ruiz, 440 F.3d at 1257; 8 C.F.R. § 208.13(b)(2).

At issue here is whether the record compels the conclusion that Badada suffered past persecution or that she has a well-founded fear of future persecution. What is not at issue is whether Badada's claimed persecution is based on a protected ground.  The parties agree that it is — her political opinion.[2]  Nor is Badada's credibility at issue.  Because the BIA assumed her credibility, so must we.  Shi, 707 F.3d at 1234.

We start with Badada's claim of past persecution.  We decide whether an alien has suffered past persecution by "consider[ing] the totality of the circumstances" surrounding her case.  Id. at 1235–36.  We consider the cumulative effect of the events forming the basis of her claim of persecution, not whether the individual events themselves constitute persecution.  See Delgado v. U.S. Att'y Gen., 487 F.3d 855, 861 (11th Cir. 2007).  Badada offered evidence showing that after protesting a rigged 2005 election she was arrested and detained for two and half months at the hands of Ethiopia's ruling party.  Initially, two soldiers came to her house and took her to a local police station where she was held alone in a small

---

[2] The parties here do not dispute that Badada's claimed persecution stems from her support for CUD, an opposition political party in Ethiopia that has been the subject of oppression by the governing Ethiopian People's Revolutionary Democratic Front.  See U.S. Department of State 2007 Country Report on Human Rights Practices in Ethiopia, available at http://www.state.gov/j/drl/rls/hrrpt/2007/100481.htm (last visited June 24, 2014).

cell, made to sleep on the floor, given bread and tea twice a day, and allowed to use the bathroom in the morning and evening. After two days, she and 20 other detainees were transferred by truck to Zeway prison, about four hours away.

At Zeway, she was held in a small, dark, dirty cell with ten other detainees. Like at the local prison, she was given bread and tea twice a day and allowed to use the bathroom in the morning and evening. Her captors at Zeway interrogated her twice, with the more serious questioning occurring three weeks in. During that interrogation session, three soldiers asked her about her support for CUD, the opposition party that she had backed. When she denied ever working for or supporting the party, two of the soldiers beat her on the legs and back with rubber batons. She was struck four or five times, leaving her bruised and in pain. The soldiers also pushed her "roughly." She feared that she would be severely injured or killed.

The second interrogation took place about a week before Badada's release. That time the two soldiers questioning her offered to free her if she agreed to serve as an informant on CUD. Badada agreed. Her captors warned her that she would face severe consequences if she did not cooperate. About six months later, after deciding that she would not follow through on her promise to inform on CUD, Badada fled Ethiopia.

7

Even viewing the record in the light most favorable to the BIA's decision and drawing all reasonable inferences in favor of that decision, the record compels the conclusion that Badada was persecuted. The INA does not define persecution. Sepulveda v. U.S. Att'y Gen., 401 F.3d 1226, 1231 (11th Cir. 2005). But we have explained that persecution is an "extreme concept, requiring more than a few isolated incidents of verbal harassment or intimidation, and that mere harassment does not amount to persecution." Id. (brackets and quotation marks omitted). What happened to Badada was more egregious than mere harassment and more extreme than a few isolated incidents of verbal harassment or intimidation. What happened to her is as bad as treatment that we have held to be persecution. On this point our decision in Shi is instructive. See 707 F.3d 1231.

In Shi, we reversed the BIA's and IJ's finding that Shi, a Chinese Christian, had not suffered past persecution. Id. at 1234–39. Chinese officials had targeted Shi on account of his faith. Id. at 1236–37. They broke up his church service, confiscated his family's bibles, and detained him for seven days. Id. During the detention, they slapped him, threw him to the floor, and handcuffed him to an iron bar overnight in the rain. Id. at 1237. After being left outside in the rain all night, he became sick, and when he did not recover after two days, the police released him. Id. at 1237. Considering the totality of the circumstances, we held that Shi had suffered past persecution. Id. at 1236. We emphasized that the act of

8

handcuffing him to an iron bar outside in the rain was "brutal, inhumane, and extreme." Id. at 1238. And we said that "another significant fact lending further support to finding persecution is the length of Shi's detention following his arrest: in this case, seven days." Id. at 1237. We noted that we had never found "detention combined with some physical abuse" to be insufficient "to compel a finding of persecution . . . when the detention lasted an entire week." Id.

Badada's story is a lot like Shi's. Both were detained — Badada for two and a half months and Shi for seven days. And both were physically abused at the hands of their captors. Badada was beaten with batons on the legs and back. After striking her four or five times, the men interrogating her also pushed her "roughly." She feared that she would be severely injured or killed, and she suffered from pain and bruising. Shi, on the other hand, was slapped, thrown to the floor, and handcuffed to an iron bar overnight outside in the rain. He became ill after spending the night outside, and he later needed medical attention.

In an attempt to distinguish the cases of Badada and Shi, the government contends that the physical abuse suffered by Badada was less severe than that suffered by Shi. Even if we accept that as true, the severity of the physical abuse suffered is only one of the factors to consider when deciding if there was persecution. We must also consider the length of detention. With respect to that factor, the harm Badada suffered was far worse than the harm suffered by Shi.

9

Badada was detained for ten times longer than Shi, and the conditions of her detention were deplorable.  Considering the totality of the circumstances, including both the length of her detention and the abuse she underwent, the record compels the conclusion that Badada suffered past persecution.

Because the record compels the conclusion that, if her statements are credible, Badada suffered past persecution, she is entitled to the benefit of a rebuttable presumption of a well-founded fear of future persecution.  See 8 C.F.R. § 208.13(b)(1)(i).  We need not reach the separate question whether she has also proven a well-founded fear of future persecution.  Instead, we grant Badada's petition and remand for further proceedings.  On remand, the BIA should determine whether Badada's statements (including her testimony) are credible.  If they are, her application for asylum should be granted unless the government rebuts the presumption that she has a well-founded fear of future persecution.  If her statements are not credible, her application for asylum should be denied unless there is sufficient corroborative evidence other than her statements to prove her claims.

**PETITION GRANTED.**