[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 12, 2010
JOHN LEY
CLERK

No. 09-14080
Non-Argument Calendar
_____

Agency Nos. A097-859-289
A097-859-290

CUI CHEN,
YUYONG WENG,

Petitioners,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(May 12, 2010)

Before EDMONDSON, BIRCH and FAY, Circuit Judges.

PER CURIAM:

Cui Chen ("Chen") and her husband Yuyong Weng ("Weng") (collectively,

"the Petitioners"), both citizens and natives of the People's Republic of China,

petition for review of the Board of Immigration Appeals' ("BIA") decision denying asylum and withholding of removal under the Immigration and Nationality Act ("INA") and the Convention Against Torture ("CAT"). We DISMISS the petition for lack of jurisdiction as to the Petitioners' asylum claims because the BIA found that they were time-barred. We also DISMISS the petition as to Chen's claim for CAT relief for failure to exhaust administrative remedies. Finally, we DENY the petition as to Chen's claim for withholding of removal under the INA.

## I. BACKGROUND

Chen entered the United States in April 2000. In 2002, she met Weng, who had entered the United States in January 2000. They married in March 2004. In April 2004, Chen applied for asylum, withholding of removal, and CAT relief, and named Weng as a derivative applicant.

In May 2004, an asylum officer interviewed Chen in the presence of private counsel and a Mandarin interpreter. Chen told the asylum officer that in 1999, police officers interrogated her for one hour at a police station about her Falun Gong activities, beat her on the neck, and detained her for two days until her parents paid a fine of 2000 RMB.[1] She was instructed to stop practicing Falun Gong and to report once a week to the police station. Chen explained that she had

---

[1] RMB refers to the renminbi, or Chinese yuan, which is China's currency.

been smuggled into the United States for $50,000 by a "snakehead." Administrative Record ("AR") at 239. En route, she had spent seven to eight months in Thailand and three to four months in Malaysia at the snakehead's apartment learning to speak Japanese so that she could pose as a Japanese citizen when she entered the United States.

In June 2004, Chen and Weng received a notice to appear before an Immigration Judge ("IJ"), charging them with removability for entering without valid documentation. Both conceded removability at a July 2004 hearing.

A hearing on the merits occurred in May 2008. Chen testified that she was persecuted in China because she practiced Falun Gong. When she was seventeen years old, two police officers came to her school, took her to the police station, and detained her for two days. They demanded to know the names of other Falun Gong members. When Chen refused to answer, a police woman grabbed her hair and hit Chen's shoulder. Her parents secured her release after paying a 20,000 yuan fine. Chen initially stated the police asked her to report once every two weeks thereafter, but later testified that she had to report weekly. Chen sought medical treatment although her shoulder was not broken. She was subsequently expelled from school because the practice of Falun Gong is illegal in China.

Chen testified that she left China in April 1999 with a "snakehead" and stayed in Thailand for almost a year before departing for Japan. Id. at 138-40, 150.

3

On her way to Japan, she spent a few hours at the airport in Malaysia. She explained her four-year delay in applying for asylum was caused by her unfamiliarity with the English language and her lack of financial resources. She stated that she continues to practice Falun Gong exercises two to three times per week. If returned to China, she feared the police would arrest her and force her to report to them based on her Falun Gong membership. She also feared she would be forced to have surgery if she became pregnant again because since arriving in the United States, she has given birth to two children.

Chen's husband, Weng, also testified at the hearing. He stated that Chen practices Falun Gong privately once or twice a week. He does not want to return to China because the Chinese government ransacked his parents' home after his mother gave birth to three children.

The IJ first denied Chen's application for asylum as time-barred because Chen failed to demonstrate changed or extraordinary circumstances to excuse her failure to file within a year of arrival. As the derivative applicant, Weng was thus not only ineligible for asylum, but he was also ineligible for withholding of removal under the INA and the CAT because neither permits derivative withholding.

The IJ then determined that both Chen and Weng were not credible. With respect to Chen, the IJ gave the following reasons: (1) Chen testified that she was

4

in Malaysia for only a few hours, but she told the asylum officer that she was in Malaysia for three to four months learning how to speak Japanese; (2) Chen testified she was beaten on her shoulder and required medical treatment, but she told the asylum officer she was beaten on her neck and no medical treatment was mentioned; (3) Chen testified that her parents paid 20,000 RMB for her release, but Chen told the asylum officer and stated in her application that her parents paid 2,000 RMB; and (4) Chen had limited knowledge of Falun Gong and made no showing why her private exercises would cause her difficulty with the Chinese authorities. As for Weng, the IJ discredited his testimony based on his lack of familiarity with Falun Gong exercises and the differences between his testimony and his statements during the asylum interview.

Next, the IJ found that the acts Chen testified about did not rise to the level of past persecution. IJ also found Chen ineligible for withholding of removal under the INA, which required her to show that it was more likely than not that she would be persecuted if returned to China. According to the State Department Country Reports, the Chinese government targets public practitioners of Falun Gong, especially those who engage in group activities. Given that Chen practiced Falun Gong privately in her home, the IJ concluded that she failed to show she would be persecuted based on her Falun Gong activities. Likewise, Chen failed to demonstrate that it was more likely than not that she would suffer from torture

5

based on her Falun Gong practice, thus rendering her ineligible for relief under the CAT.

The BIA dismissed the appeal. It affirmed the IJ's findings and conclusions that Chen's asylum application was time-barred. Even if the application was timely filed, however, the BIA found that Chen failed to sustain her burden of proof as to asylum or withholding of removal under the INA. Insofar as her claims were based on her alleged Falun Gong activities, the BIA upheld the IJ's adverse credibility finding. To the extent Chen claimed a well-founded fear of future persecution based on the births of her two children, the BIA agreed with the IJ that the record failed to establish Chen would face sanctions, economic or otherwise, amounting to persecution upon her return to China. Finally, the BIA noted that Chen did not challenge the IJ's denial of withholding under the CAT, and found no reason to disturb the IJ's decision on that matter.

In their petition for review, Chen and Weng contend that the BIA and IJ erred in denying their application for asylum and withholding of removal based on an adverse credibility finding. They contend that the inconsistencies identified by the IJ were trivial and peripheral to the heart of their claim. Additionally, they argue that the IJ did not properly evaluate whether Chen had a well-founded fear of future persecution based on her continued Falun Gong practices in the United States.

## II. DISCUSSION

A.  Asylum Claims of Chen and Weng

As a preliminary matter, the government argues that the BIA's finding that Chen's asylum application was time-barred deprives us of subject-matter jurisdiction over the Petitioners' asylum claims.  We review our subject-matter jurisdiction de novo.  Gonzalez-Oropeza v. U.S. Att'y Gen., 321 F.3d 1331, 1332 (11th Cir. 2003) (per curiam).

An alien has one year after arriving in the United States in which to apply for asylum.  8 U.S.C. § 1158(a)(2)(B) (2009).  An untimely application may be considered upon a showing that changed circumstances materially affect the alien's asylum eligibility or that extraordinary circumstances delayed the filing.  Id. § 1158(a)(2)(D).  No court has jurisdiction to review the Attorney General's determination regarding the timeliness of an application.  Id. § 1158(a)(3).

We agree with the government that we lack jurisdiction to review the denial of Chen and Weng's asylum claims.  The BIA affirmed the IJ's ruling that Chen's asylum application was untimely because she filed it approximately four years after arriving in the United States and she did not qualify for any exception.  We may not review the BIA's determination pursuant to 8 U.S.C. § 1158(a)(3).  See Chacon-Botero v. U.S. Att'y Gen., 427 F.3d 954, 957 (11th Cir. 2005) (per curiam) ("Thus, we adhere to our existing precedent that 8 U.S.C. § 1158(a)(3) 'divests our

7

Court of jurisdiction to review a decision regarding whether an alien complied with the one-year time limit or established extraordinary circumstances that would excuse his untimely filing.'"). Accordingly, we dismiss the petition for lack of jurisdiction as to the Petitioners' asylum claims.

B. Withholding of Removal under the INA

We review the BIA's decision, "except to the extent that it expressly adopts the IJ's opinion." Al Najjar v. Ashcroft, 257 F.3d 1262, 1284 (11th Cir. 2001). Where, as here, the BIA issues its own decision expressly adopting portions of the IJ's decision, we review the BIA's decision and those parts of the IJ's decision expressly adopted by the BIA. See id. We review the BIA's factual determinations under the substantial evidence test, which requires us to affirm a factual finding unless the record compels a reversal. Ruiz v. U.S. Att'y Gen., 440 F.3d 1247, 1254-55 (11th Cir. 2006) (per curiam).

A credibility determination is a factual finding subject to the substantial evidence test. Id. at 1255. Consistency on direct examination and with the written application are indicators of reliable testimony. Id. Once an adverse credibility finding is made, the applicant bears the burden of showing that this finding was not based on specific, cogent reasons or substantial evidence. Id. "We may not substitute our judgement for that of the IJ with respect to credibility findings." Id. (quotation marks, brackets, and citation omitted).

8

In a withholding of removal claim, an alien must show that her life or freedom would be threatened in the country of removal because of her "'race, religion, nationality, membership in a particular social group, or political opinion.'" Sepulveda v. U.S. Att'y Gen., 401 F.3d 1226, 1232 (11th Cir. 2005) (per curiam) (quoting 8 U.S.C. § 1231(b)(3)(A)).  The alien bears a higher burden of proof than for asylum claims as she must show that it is "more likely than not" that she will be persecuted if returned to her country.  Id. (quotation marks and citation omitted).  Moreover, unlike asylum, the withholding statute does not grant derivative rights for the spouse of a petitioner.  See Delgado v. U.S. Att'y Gen., 487 F.3d 855, 862 (11th Cir. 2007) (per curiam).  Accordingly, as a derivative applicant, Weng has no claim for withholding of removal under the INA.

This leaves only Chen's claim for withholding of removal based on her Falun Gong activities.[2]  Our review of the record does not compel reversal of the adverse credibility finding against Chen.  The BIA concurred with Chen that minor inconsistencies relating to peripheral facts, such as whether her parents paid 2000 RMB or 20,000 RMB for her release from the police station, did not alone support the IJ's adverse credibility finding.  Nevertheless, the BIA noted that the credibility finding was also supported by "material discrepancies" identified by the IJ which

---

[2] Chen does not argue in her petition for review that she was entitled to withholding of removal based on the birth of her two children in the United States.  She has therefore abandoned this argument.  See Sepulveda, 401 F.3d at 1228 n. 2.

directly related to Chen's alleged abuse. AR at 4. Specifically, the BIA cited to the transcript of the hearing wherein Chen testified that a police officer hit her shoulder, resulting in medical treatment. Yet Chen stated in her asylum application and during the asylum interview that she was beaten on her neck, without mentioning any medical treatment. Chen now argues in her petition that there is not much difference between one's neck and shoulder based on their close proximity. However, Chen was specifically asked during the merits hearing to point to her injured body part, and the transcript indicates she pointed to her shoulder. At no time did she testify that her neck was beaten, as asserted in her asylum application and interview. Given that this alleged beating was the sole incident for her claim of persecution, we agree with the BIA that this difference was material.

In addition to this discrepancy, the IJ correctly noted that Chen testified inconsistently with her asylum interview as to how long she stayed in Malaysia (a few hours versus a few months). She also vacillated as to the reporting requirement, initially stating that she was required to report to the police every two weeks, and later changing it on cross-examination to every week, as stated in her asylum application and during the asylum interview. We thus find substantial evidence to support the agency's adverse credibility finding in this case.

Despite the adverse credibility finding against her, the IJ was still required to

10

consider other evidence produced by Chen. See Ruiz, 440 F.3d at 1255. The IJ

considered but rejected Weng's testimony as incredible – a finding not challenged

in the petition for review. In any event, Weng did not testify about Chen's alleged

detention and beating by the police. However, the IJ's decision does not reflect

whether she considered other documentary evidence submitted by Chen, such as:

(1) a February 1999 hospital report showing that Chen was prescribed Chinese

herbal medicine for injuries to her head, hand, feet, and back; (2) a 1998 Falun

Gong Membership Certification for Chen; (3) a news article describing the arrest

and torture in 2005 and 2006 of a prominent Falun Gong activist; and (4)

documents reporting allegations of organ harvesting of Falun Gong practitioners in

China. Instead, after determining that Chen and Weng were incredible, the IJ

stated that "[a]lmost the entire claim rests on their credibility as there is no

corroboration presented of the claim of arrest or mistreatment because [Chen]

practiced Falun Gong." AR at 31-32. We lack jurisdiction to consider whether the

IJ erred in not considering Chen's documentary evidence, however, because Chen

did not raise this issue in her appeal to the BIA.[3] See Amaya-Artunduaga v. U.S.

Att'y Gen., 463 F.3d 1247, 1250 (11th Cir. 2006) (per curiam) (explaining that

pursuant to 8 U.S.C. § 1252(d)(1)'s exhaustion of remedies requirement, we lack

---

[3] While Chen argued that the credibility finding was based on insignificant and
immaterial inconsistencies, she never specifically argued that the IJ erred in failing to consider
her documentary evidence after making the adverse credibility determination. See AR at 18-19.

jurisdiction to consider a claim that was not raised before the BIA).

Accordingly, we conclude that the record does not compel us to reverse the BIA's finding that Chen failed to sustain her burden of proof on her withholding of removal claim.

## C. CAT relief

The BIA found that Chen failed to raise any arguments on appeal challenging the IJ's withholding of removal under the CAT.[4]  This finding is not challenged in the petition for review.  As Chen failed to exhaust her administrative remedies on this issue, we lack jurisdiction to consider it.  See Amaya-Artunduaga, 463 F.3d at 1250.

## III.  CONCLUSION

In sum, we conclude that we lack jurisdiction over the Petitioners' time-barred asylum claims and over Chen's CAT claim; we therefore DISMISS the petition as to those claims.  The record does not compel reversal of the BIA's adverse credibility determination and we therefore DENY the petition as to Chen's claim for withholding of removal under the INA.

**PETITION DISMISSED IN PART AND DENIED IN PART.**

---

[4] Like the withholding statute, the CAT regulation does not mention derivative rights. See 8 C.F.R. § 208.16(c)(2); see also Martinez v. U.S. Att'y Gen., 324 Fed. Appx. 829, 833 (11th Cir. 2009) (per curiam) (unpublished) (concluding that the applicant's children have no derivative benefits to CAT relief because the CAT regulation "seemingly forecloses a derivative claim").  Accordingly, we do not address any claim for CAT relief with respect to Weng.