[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 11-13715
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APRIL 5, 2012
JOHN LEY
CLERK

Agency No. A200-634-256

MAX DANIEL LANGE WULFF,
MARIA EUGENIA LIMA DONIZ,

Petitioners,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(April 5, 2012)

Before CARNES, MARCUS and WILSON, Circuit Judges.

PER CURIAM:

Max Daniel Lange Wulff and Maria Eugenia Lima Doniz (collectively, "the petitioners"), natives and citizens of Venezuela, seek review of the Board of Immigration Appeal's ("BIA") final order affirming the Immigration Judge's ("IJ") denial of their application for asylum, withholding of removal under the Immigration and Nationality Act ("INA"), and withholding of removal under the United Nations Convention Against Torture ("CAT"). On appeal, the petitioners argue that: (1) substantial evidence does not support the BIA's finding that Wulff did not testify credibly, which was based upon inconsistencies between the administrative record and Wulff's testimony regarding four encounters with Venezuelan officials or government sympathizers, and that their evidence sufficiently corroborated Wulff's testimony; and (2) the BIA and IJ violated their substantive and procedural due process rights. After careful review, we deny the petition in part, and dismiss it in part.

Where the BIA issues its own opinion, we review only the BIA's decision, except to the extent that it expressly adopts the IJ's decision. Kueviakoe v. U.S. Att'y Gen., 567 F.3d 1301, 1304 (11th Cir. 2009).

We review our subject-matter jurisdiction de novo. Amaya-Artunduaga v. U.S. Att'y Gen., 463 F.3d 1247, 1250 (11th Cir. 2006). We lack jurisdiction to review the BIA's determination that an applicant is ineligible for asylum because he did not file

2

a timely asylum application and that changed or extraordinary circumstances did not excuse the untimely filing. 8 U.S.C. § 1158(a)(3); Chacon-Botero v. U.S. Att'y Gen., 427 F.3d 954, 956-57 (11th Cir. 2005). We also lack jurisdiction to consider a claim raised in a petition for review unless the petitioner exhausted his administrative remedies with respect to that issue. 8 U.S.C. § 1252(d)(1); Amaya-Artunduaga, 463 F.3d at 1250.

We review the BIA's factual findings, including credibility determinations, under the substantial evidence standard. Kueviakoe, 567 F.3d at 1304. We must affirm the BIA's decision if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole. Delgado v. U.S. Att'y Gen., 487 F.3d 855, 860 (11th Cir. 2007). Evidence must be viewed in the light most favorable to the BIA's decision, and we draw all inferences in favor of that decision. Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004) (en banc). Only if the record compels it may we reverse the BIA's factual findings. Id.

An applicant must establish eligibility for relief from removal by offering credible, direct, and specific evidence. Forgue v. U.S. Att'y Gen., 401 F.3d 1282, 1287 (11th Cir. 2005). Indications of reliable testimony include consistency on direct examination, consistency with the written application, and the absence of embellishment. Ruiz v. U.S. Att'y Gen., 440 F.3d 1247, 1255 (11th Cir. 2006).

3

While the applicant's credible testimony, alone, may be sufficient to establish eligibility for relief from removal, an adverse-credibility determination may be sufficient to deny relief where there is no other evidence of persecution. Forgue, 401 F.3d at 1287. Moreover, as the applicant's testimony becomes weaker, the greater the need for corroborative evidence becomes. See Yang v. U.S. Att'y Gen., 418 F.3d 1198, 1201 (11th Cir. 2005). The BIA must make a clean determination of credibility, which requires it to expressly state its credibility finding. See id. It must offer specific, cogent reasons for an adverse-credibility finding, and, upon such a finding, the applicant bears the burden of showing that it was not supported by specific, cogent reasons, or that it was not based upon substantial evidence. Forgue, 401 F.3d at 1287.

The REAL ID Act of 2005 governs credibility determinations regarding applications for asylum and withholding of removal filed after May 11, 2005. Kueviakoe, 567 F.3d at 1305. That statute reads:

> Considering the totality of the circumstances, and all relevant factors, a trier of fact may base a credibility determination on the demeanor, candor, or responsiveness of the applicant or witness, the inherent plausibility of the applicant's or witness's account, the consistency between the applicant's or witness's written or oral statements (whenever made and whether or not under oath, and considering the circumstances under which the statements were made), the internal consistency of each such statement, the consistency of such statements with other evidence of record (including the reports of the Department

4

of State on country conditions), and any inaccuracies or falsehoods in such statements, without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim, or any other relevant factor. There is no presumption of credibility, however, if no adverse-credibility determination is explicitly made, the applicant or witness shall have a rebuttable presumption of credibility on appeal.

8 U.S.C. § 1158(b)(1)(B)(iii). Because of the petitioner's burden and the totality-of-the-circumstances test, tenable explanations for inconsistencies or implausibilities are not sufficient to reverse a BIA's adverse-credibility findings if the explanation would not compel a reasonable factfinder to reverse the finding. See Chen v. U.S. Att'y Gen., 463 F.3d 1228, 1233 (11th Cir. 2006).

We have permitted the BIA to rely upon omissions and inconsistencies between an applicant's testimony and his interviews with asylum officers, especially where the hearing testimony "actually contradicts" and "cannot be squared with" the interview. See Shkambi v. U.S. Att'y Gen., 584 F.3d 1041, 1049-52 (11th Cir. 2009) (upholding an adverse-credibility finding based upon omissions in the applicant's airport and credible-fear interviews and inconsistencies between those interviews and the applicant's testimony). Thus, we have upheld reliance on omissions from, and inconsistencies in, interviews where they did not merely give a less detailed version of the facts, but omitted entire incidents and other significant facts, and directly contradicted subsequent testimony. See id.

As an initial matter, there are a number of issues not properly before us. With respect to the petitioners' asylum claim, we do not have jurisdiction to review the BIA's conclusion that they were ineligible for asylum because they filed an untimely application that was not excepted by changed or extraordinary circumstances. See Chacon-Botero, 427 F.3d at 956-57. Further, to the extent the petitioners seek to argue on appeal that the agency erred by relying on the asylum officer's notes, as opposed to the content of the asylum interview itself, they did not raise this argument before the BIA and we are without jurisdiction to consider it. See Amaya-Artunduaga, 463 F.3d at 1250. Finally, we do not have jurisdiction to consider the petitioners' arguments that the agency violated their substantive and procedural due process rights because they did not raise these claims before the BIA. See id. In any case, even if the petitioners were not required to exhaust their substantive due process claim, they have abandoned it on appeal because they only made a passing mention of the claim and offered no substantive argument. See Sepulveda, 401 F.3d at 1228 n.2. Accordingly, we dismiss the petition for review to the extent that the petitioners seek to raise these claims.

With respect to the petitioners' claims for withholding of removal and CAT relief, the record does not compel a finding that Wulff testified credibly when read in a light most favorably to the BIA's decision. The BIA relied upon a number of

inconsistencies in the record in support of its adverse-credibility finding, including inconsistencies regarding the date on which an individual struck Wulff's vehicle three times. Although Wulff testified that this incident occurred on November 16, 2000, a police report indicated that he informed Venezuelan law enforcement that this incident took place on September 16, 2000. The BIA recognized that this was a minor inconsistency, but the record plainly refutes the petitioners' argument that the BIA rested the adverse-credibility finding solely upon it.

Indeed, the BIA also relied upon Wulff's omission of incidents occurring on August 15, 2000, and September/November 16, 2000, from his asylum interview. These were the types of omissions that we have permitted the BIA to rely upon, as Wulff told the asylum officer that he suffered only <u>one</u> attack or threat and proceeded to describe the September 14, 2001, incident. He then told the asylum officer that there were no other incidents. Thus, Wulff's statements before the asylum officer foreclosed the possibility that incidents other than the one on September 14, 2001, occurred.

Inconsistencies in the record also existed with respect to incidents occurring on December 19, 2000, and September 14, 2001, which further supported the BIA's adverse-credibility finding. In his asylum interview, Wulff denied that the National Guardsmen had harmed him during the December 19, 2000, incident, but testified and

7

provided other evidence that they caused him injuries that required medical attention. As to the September 14, 2001, incident, Wulff testified that three Bolivarian Circles members, who wore red berets, attacked him and Acevedo, and that the assault lasted one hour. Wulff's statement, however, indicates that there were four individuals involved in this attack, and he told the asylum officer that the assault lasted a couple of hours, and that his assailants wore regular clothes and wore no red.

In light of the inconsistencies between Wulff's testimony and the record, a greater need for corroborative evidence arose. See Yang, 418 F.3d at 1201. Substantial evidence, however, supports the BIA's finding that Wulff's corroborative evidence did not resolve the inconsistencies. One of the police reports that the petitioners submitted created one of the inconsistencies upon which the BIA relied, and, in any case, the reports only relayed Wulff's own statements regarding the incidents that were made at least eight years after the incidents. Likewise, while the medical documentation regarding the December 19, 2000, incident may have provided some resolution as to whether Wulff suffered any harm that day, neither of the medical reports spoke to any of the other inconsistencies that the BIA identified. Wulff's family members provided affidavits, but they only generally asserted that Venezuelan officials persecuted Wulff and did not offer any basis to corroborate the

specific facts of that alleged persecution. Finally, the petitioners' remaining evidence did not speak to the specifics of the alleged persecution against Wulff.

Because of the inconsistencies between Wulff's testimony and the record, and the lack of sufficient corroborative evidence, substantial evidence supports the BIA's adverse-credibility finding. Although the petitioners asserted plausible explanations for the inconsistencies throughout the proceedings, they were not such as to compel a finding that Wulff testified credibly. See Chen, 463 F.3d at 1233. In light of the adverse-credibility finding, the record does not compel a reversal of the BIA's denial of withholding of removal and CAT relief. Accordingly, we deny the petition for review with respect to these claims.

**PETITION DISMISSED IN PART, DENIED IN PART.**