[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-12833
Non-Argument Calendar
_____

Agency No. A099-886-490

ANGEL TJHANG,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(March 26, 2013)

Before CARNES, BARKETT, and FAY, Circuit Judges.

PER CURIAM:

Angel Tjhang seeks review of the Order of the Board of Immigration

Appeals ("BIA") affirming the Immigration Judge's ("IJ") denial of asylum

pursuant to the Immigration and Nationality Act ("INA") § 208(a), 8 U.S.C. § 1158(a), withholding of removal under INA § 241(b)(3), 8 U.S.C. § 1231(b)(3), and protection under the United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment ("CAT"), 8 C.F.R. § 208.16(c).   For the reasons set forth below, we deny Tjhang's petition.

I.

Tjhang, a citizen of Indonesia, entered the United States in November 2005, and subsequently filed an application seeking asylum, withholding of removal, and CAT relief.  In her supplemental statement, she claimed that she was persecuted in Indonesia because she was Chinese and a Buddhist, rather than a Muslim.  Before the merits hearing, Tjhang submitted a copy of the U.S. State Department Country Report on International Religious Freedom for 2010 ("2010 Religious Freedom Report") and the U.S. State Department Country Report on Human Rights Practices in Indonesia for 2009 ("2009 County Report").

At the merits hearing, Tjhang testified that, from her birth in 1983 until 1995, she lived in a city that was predominately Muslim.  During that time, (1) her uncle was beaten by a native;[1] (2) she was bullied by native boys touching her chest and pulling down her skirt, and her teachers did not punish the boys; (3) a native customer at her parents' store threatened to kill her family; and (4) her

---

[1] Tjhang testified at the hearing that the term "native" referred to a Muslim.

2

native classmates attacked her in the pool and taunted her on the basis of her Chinese ethnicity. In 1995, she and her family moved to a city in Indonesia that was half Chinese and half Muslim, and in that city, Muslim men pushed her off of her bicycle, and she injured her lips and arm, although her arm did not need stiches. During riots in Indonesia in 1998, a group of natives attempted to rape her sister, and natives attempted to burn her uncle's store, but she and other family members escaped the store and stayed at a hotel. Finally, in 2005, native men attempted to touch her while she was riding on a motorcycle with her boyfriend. The native men kicked her boyfriend, and one of the native men had a knife, but Tjhang convinced the man not to stab her boyfriend. Although she was a Buddhist in Indonesia, she was baptized as a Christian in 2006 in the United States.

In an oral decision, the IJ stated that he found Tjhang's testimony credible. He stated that he was denying her application for asylum because she had not suffered past persecution and did not have a well-founded fear of future persecution on the basis of either her ethnicity or her religion, regardless of whether she was Buddhist or Christian. The IJ also determined she had failed to show that she was eligible for withholding of removal or CAT relief. The BIA dismissed Tjhang's appeal and agreed with the IJ's finding that the harassment Tjhang had suffered did not rise to the level of past persecution. The BIA affirmed the IJ's determination that Tjhang did not possess a well-founded fear of future

persecution on the basis of her Chinese ethnicity or her Christian beliefs if she returned to Indonesia, and the BIA stated that the documentary evidence supported the IJ's determination. Because Tjhang had not satisfied her burden with respect to asylum, she had not satisfied the higher burden that applied with respect to withholding of removal. Further, because none of the harassment Tjhang experienced was perpetrated by, or with the acquiescence of, a government official, the BIA would not disturb the IJ's determination that she was ineligible for CAT relief.

## II.

On appeal, Tjhang argues that the IJ erred in denying her application for asylum because her testimony before the IJ concerning the acts against her and her family showed that she was persecuted. Further, as she is a Christian, there is a risk that she would be persecuted in the future, as illustrated by the 2010 Religious Freedom Report. Tjhang asks us to hold that a pattern and practice of persecution against Christians in Indonesia exists based on the evidence in the 2010 Religious Freedom Report. She also asks us to consider the persuasive authority of the Ninth Circuit concerning the disfavored-group analysis and argues that, under this analysis, she is eligible for asylum. She asserts that she is also eligible for withholding of removal on the same basis that she is entitled to asylum. She argues that she qualifies for CAT relief based on her status as a Chinese-Christian

4

Indonesian because she was persecuted in the past, and the government is taking little action to stop physical attacks against Christians.

In a petition for review of a BIA decision, we review factual determinations under the substantial evidence test. *Kazemzadeh v. U.S. Att'y Gen.*, 577 F.3d 1341, 1350 (11th Cir. 2009). Under the substantial evidence test, we draw every reasonable inference from the evidence in favor of the decision, and reverse a finding of fact only if the record compels reversal. *Id.* at 1351. The fact that the record may support a contrary conclusion is insufficient to reverse. *Id.* We review the BIA's decision as the final judgment, unless the BIA expressly adopted the IJ's decision. *Id.* at 1350. Where the BIA expressly adopts the IJ's decision, we will review the decisions of both the BIA and the IJ. *Id.*

An applicant for asylum must meet the INA's definition of a refugee. INA § 208(b)(1)(A), 8 U.S.C. § 1158(b)(1)(A). The INA defines a refugee as:

> any person who is outside of any country of such person's nationality . . . and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.

INA § 101(a)(42)(A), 8 U.S.C. § 1101(a)(42)(A).

To show eligibility for asylum, an applicant may satisfy her burden of proof in either of two ways. *Sepulveda v. U.S. Att'y Gen.*, 401 F.3d 1226, 1230-31 (11th Cir. 2005). First, she may show that she was persecuted in the past in her home

5

country on a protected ground. *Id.* If the applicant demonstrates past persecution, there is a rebuttable presumption that she has a well-founded fear of future persecution. *Ruiz v. U.S. Att'y Gen.*, 440 F.3d 1247, 1257 (11th Cir. 2006). Second, an applicant may meet her burden by establishing that she has a well-founded fear that she will be persecuted in the future on account of a protected ground. *Sepulveda*, 401 F.3d at 1231. She must demonstrate that her well-founded fear of future persecution is subjectively genuine and objectively reasonable. *Id.* The applicant must present specific, detailed facts that show a good reason to fear that she will be singled out for persecution. *Id.* However, the applicant does not need to prove that she would be singled out for persecution if she is a member of a group that is subjected to a pattern or practice of persecution in her country of nationality. *See Kazemzadeh*, 577 F.3d at 1354. When considering whether the applicant has established a pattern or practice of persecution in her home country, the BIA is entitled to rely heavily on the U.S. State Department's Country Reports. *Id.*

Persecution is an extreme concept and requires more than a few isolated incidents of verbal harassment or intimidation. *See Sepulveda*, 401 F.3d at 1229, 1231 (providing that death threats to Sepulveda, her brother, and other members of her political group did not rise to the level of past persecution). In determining whether an applicant has suffered past persecution, the factfinder must consider the

6

cumulative effects of any alleged incidents. *See Delgado v. U.S. Att'y Gen.*, 487 F.3d 855, 861 (11th Cir. 2007). We may consider a threatening act against another as evidence that the applicant suffered persecution where that act concomitantly threatens the applicant. *De Santamaria v. U.S. Att'y Gen.*, 525 F.3d 999, 1009 n.7 (11th Cir. 2008).

The record demonstrates that Tjhang has failed to establish past persecution on account of a statutorily-protected factor. First, Tjhang's statements and testimony establish that she had been subject to various assaults on the basis of her Chinese ethnicity. While the incidents directed at her certainly amount to harassment, it cannot be said that the record compels a finding that they met the "extreme" threshold level of persecution. *See Sepulveda*, 401 F.3d at 1231. Rather, we have held that worse treatment than Tjhang suffered did not establish persecution. *See, e.g.*, *Djonda v. U.S. Att'y Gen.*, 514 F.3d 1168, 1174 (11th Cir. 2008) (holding that no persecution occurred when an alien was detained for 36 hours after participating in a political rally, and during his detention, police officers beat him severely enough to warrant a 2-day hospital stay, several medications, and 2 weeks of rest); *Kazemzadeh*, 577 F.3d at 1350 (holding that an alien had not established past persecution when he was arrested while participating in a student demonstration, interrogated and beaten for five hours, detained for four days, subsequently monitored by Iranian authorities, and forced to appear before a

7

university disciplinary committee and an Islamic court).  Therefore, substantial evidence supports the BIA's determination that Tjhang did not show past persecution.

In addition, the record does not compel a finding that Tjhang has a well-founded fear of future persecution if she returns to Indonesia.  Tjhang presented no evidence indicating that she would be singled out for persecution based on her Chinese-Christian status.  Furthermore, there is no compelling evidence in the record that mandates finding a pattern and practice of persecuting Christians in Indonesia.[2]  Tjhang points to statements in the 2010 Religious Freedom Report that indicated that 28 churches were closed in 2010 due to violence and intimidation, that there had been few convictions relating to the closings, that several local governments based their ordinances on Shari'a law, and that one province authorized Shari'a law.  However, this does not compel a determination that there is a pattern or practice of persecution against Christians in Indonesia.  The 2010 Religious Freedom Report also provided that the Indonesian Constitution provided for freedom of religion and that the Indonesian government generally respected religious freedom for the six officially recognized religions, which included Catholicism and Protestantism.  Further, the ordinances based on Shari'a law were sporadically enforced and only applied to Muslims.  The province

_____

[2] Tjhang does not raise any claim on appeal that a pattern or practice against ethnic Chinese exists in Indonesia, and thus, she has abandoned this claim.  *See Sepulveda*, 401 F.3d at 1228 n.2.

where Shari'a law was authorized also specifically exempted Christians, and enforcement had reduced since 2007.  The 2009 Country Report stated that the Indonesian Constitution provided all persons the right to worship according to their own religions or beliefs, and the government generally respected that provision.  Based on the evidence in these reports indicating that the Indonesian government generally respects freedom of religion, we conclude that the record does not compel reversal on this basis.   Because we have held that the law does not permit weighing of an applicant's membership in a targeted group along with his individualized risk of being targeted for persecution, we will not apply the disfavored-group analysis to evaluate Tjhang's eligibility for asylum.  *See Mohammed v. U.S. Att'y Gen.*, 547 F.3d 1340, 1346, 1348 (11th Cir. 2008).  Thus, we conclude that Tjhang has failed to demonstrate that she was eligible for asylum.

To qualify for withholding of removal and CAT relief, an applicant must establish standards more stringent than those for asylum eligibility.  *See Zheng*, 451 F.3d at 1292.  Because Tjhang could not prove her entitlement to asylum relief, she necessarily failed to demonstrate that it was more likely than not that she would be persecuted or that she would be subjected to severe pain or suffering by, or with the acquiescence of, government officials in Indonesia.  *See id.*

For the foregoing reasons, we deny Tjhang's petition.

**DENY PETITION.**

9